**Darrell BURCH, Plaintiff–Appellant,**

v.

**APALACHEE COMMUNITY MENTAL HEALTH SERVICES, INC., et al., Defendants–Appellees.**

No. 85–3843.

United States Court of Appeals, Eleventh Circuit.

March 18, 1988.

Richard M. Powers, Tallahassee, Fla., for plaintiff-appellant.

Robert C. Crabtree, Lloyd Monroe, Tallahassee, Fla., for Apalachee Community Mental Health.

Walter M. Meginniss, Eric J. Taylor, Asst. Attys. Gen., Tallahassee, Fla., for Williams, Potter, Parker, Sweet, McCormich, Pandya, Chou, Harrison, Daniel and Stephens.

Before RONEY, Chief Judge,
TJOFLAT, HILL, FAY, VANCE,
KRAVITCH, JOHNSON, HATCHETT,

ANDERSON, CLARK, and EDMONDSON, Circuit Judges, and TUTTLE and GODBOLD, Senior Circuit Judges.[*]

JOHNSON, Circuit Judge:

In this action brought under 42 U.S.C.A. § 1983, Darrell Burch alleges that the appellees "willful[ly], wanton[ly] and [with] reckless disregard" deprived him of his liberty without due process of law. The United States District Court for the Northern District of Florida granted the appellees' motion to dismiss the action for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). We reverse the district court, holding that *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and its progeny do not apply to Burch's allegations. Although we hold that Burch has stated a claim upon which relief could be granted and that he has a right to attempt to prove he is entitled to relief, we express no view on the merits of Burch's claim, i.e., whether he is entitled to compensatory damages.

I.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), we take the material allegations of the complaint and its incorporated exhibits as true, *Walker Process Equip. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965), and liberally construe the complaint in favor of the plaintiff. *See* Fed.R.Civ.P. 8(f); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This standard of review mandates that we reverse the dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102.

When the complaint is liberally construed and the material allegations are taken as true, Burch's complaint and incorporated exhibits reveal the following facts:

---

[*] Senior U.S. Circuit Judges Elbert P. Tuttle and John C. Godbold have elected to participate in further proceedings in this matter pursuant to 28 U.S.C.A. § 46(c).

On December 7, 1981, a concerned citizen found Darrell Burch wandering on the side of a highway and took him to the Apalachee Community Mental Health Services, Inc. (ACMHS), a facility designated by the state as capable of receiving patients suffering from mental illnesses. Upon his arrival, Burch was hallucinating, confused, disoriented, and clearly psychotic, was wearing no shoes, and believed that he was in heaven. At the request of ACMHS, Burch signed a form for voluntary admission and a form for authorization for treatment.[1]

Burch continued to appear psychotic during his three-day stay in ACMHS's PATH Program. ACMHS diagnosed Burch as having paranoid schizophrenia and began to give him psychotropic drugs. ACMHS could not provide Burch with the treatment he needed, and therefore transferred him to Florida State Hospital (FSH) in Chattahoochee, Florida, on December 10, 1981. Before transferring Burch, ACMHS had Burch sign forms requesting voluntary admission to FSH, along with a form authorizing treatment at FSH.[2] ACMHS records indicate Burch was still psychotic on December 10.

Although Burch remained in a psychotic state, FSH had him sign a form for voluntary admission upon his arrival at the facility. Burch continued to believe he was in heaven. On December 23, 1981, FSH had Burch sign another authorization for treatment form. FSH kept Burch as a patient until May 7, 1982, allegedly against his will. Throughout his 152 days in ACMHS and FSH, Burch never was accorded a hearing at which to challenge his commitment and treatment.

1. Burch attached to his complaint, and incorporated therein by reference, all the forms, documents, and correspondence mentioned in this opinion.

2. On December 8, 1981, notes of an ACMHS staff member indicated, "If he [Burch] does not begin to clear will consider FSH on 12/10. I think he will sign voluntary [sic]."

3. Exhibit G to Burch's Complaint in the present case.

Based upon the above facts and after his release from FSH, Burch brought the circumstances of his confinement to the attention of the Florida Human Rights Advocacy Committee. Burch's complaint to the Committee alleged that he had been inappropriately admitted to FSH and did not remember signing a voluntary admission form. Linda Weeks, apparently an Advocacy Committee member, researched hospital records and found Burch's signature on the voluntary admission form signed upon his arrival at FSH. Weeks, however, also found documentation that Burch was heavily medicated and disoriented on admission and concluded that Burch was "probably not competent to be signing legal documents." [3]

On August 4, 1983, the Advocacy Committee discussed the matter at its Florida State Hospital meeting. At that point, as set forth in a letter responding to Burch's complaint to the Advocacy Committee, the "hospital administration was made aware that they were very likely asking medicated clients to make decisions at a time when they were not mentally competent." [4]

Burch subsequently sought relief under Section 1983, and sued ACMHS and the FSH employees who were connected with his admission or treatment.[5] Burch alleged that these defendants had confined and treated him against his will, without any judicial determination of his need for treatment as required by Florida law and the United States Constitution. He further alleged that the defendants "willful[ly], wanton[ly] and [with] reckless disregard" deprived him of his liberty without due process of law, and that he was substantially damaged when against his will he was committed and treated with mind-altering drugs.

4. *Id.* Burch also presented a claim to the Advocacy Committee that he had been physically abused while at FSH.

5. Burch's complaint also sought recovery from the county sheriff who transported him from ACMHS to FSH. The sheriff, apparently having been dropped from the litigation, is not a party to the appeal.

All of the appellees sought dismissal of Burch's complaint for failure to state a claim upon which relief could be granted. The district court granted their motions, holding that under *Parratt*[6] and its progeny, Florida's postdeprivation procedures satisfied the requirements of due process and precluded a Section 1983 action.

## II.

In a Section 1983 action, the plaintiff must show that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[7] In the present case, Burch seeks relief based upon the Due Process Clause of the Fourteenth Amendment, which provides that "[n]o State ... shall ... deprive any person of life, liberty, or property, without due process of law...." The Due Process Clause is the source of three types of Section 1983 claims: (1) violations of incorporated provisions of the Bill of Rights; (2) violations of its substantive component; and (3) violations of its procedural component. We conclude that Burch states a claim upon which relief could be granted for a procedural due process violation.

▮ Our analysis focuses on whether (1) Burch seeks recovery based upon a constitutionally cognizable liberty interest, (2) Burch received the process he was due, (3) Burch suffered a constitutionally cognizable deprivation of liberty, and (4) Burch suffered the injury as a result of state action. We begin by holding that Burch's claim implicates a liberty interest protected by the Due Process Clause. The concept of liberty certainly protects the right of an individual to avoid the physical confinement of long-term mental hospitalization against his will. *See Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1808–09, 60 L.Ed.2d 323 (1979).

### A. *Due Process*

We next determine whether Burch received the process he was due. The Supreme Court has stressed that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* In addition, the Court has recognized that "it is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual." *Id.* at 425–26, 99 S.Ct. at 1809.

The Court has also recognized that the state has some countervailing interests: "The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." *Id.* at 426, 99 S.Ct. at 1809.

▮ Due process protection thus requires in most cases that a person be accorded some type of hearing before being committed to a mental institution. In limited cases where the countervailing state interests are met, due process permits a period of involuntary commitment prior to a hearing as long as a hearing is held shortly after the initial detention.

We adopt Florida's statutorily-prescribed procedures to gauge what type of proce-

---

**6.** In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court partially overruled *Parratt,* concluding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Id.* at 328, 106 S.Ct. at 663 (emphasis in original). *Daniels* does not govern the present case because Burch has not alleged that the appellees' negligence deprived him of his liberty.

**7.** Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

dural process Burch was due.[8] At the time that Burch was in the appellees' care, Florida law required a certain procedure for the emergency admission of mental health patients. *See* Fla.Stat. § 394.463(1) (1981) (since amended). This procedure allowed a mental health facility to provide emergency, involuntary treatment to a patient if the patient met certain criteria. Within forty-eight hours of the patient's admission, however, the facility had to (1) release the patient, (2) get his voluntary "express and informed consent to evaluation or treatment," or (3) initiate "a proceeding for court-ordered evaluation or involuntary placement." *Id.* § 394.463(1)(d).

Taking Burch's allegations as true, (1) he was not released until 152 days after his admission, well outside of the 48–hour limit; (2) although he signed authorization forms for admission and treatment at the request of ACMHS and FSH, he was incompetent to give voluntary, express, and informed consent; and (3) he was never provided with a proceeding for court-ordered evaluation necessary for involuntary placement. Consequently, Burch was not given the procedural process he was due before he was involuntarily committed to Florida State Hospital.

■ The district court concluded that, under *Parratt* and its progeny, Florida's postdeprivation procedures satisfied the requirements of due process and precluded a Section 1983 action. We do not share the district court's conclusion. *Parratt* does not apply to procedural due process viola-

tions when the state is in the position to provide predeprivation process.

As in *Fetner v. City of Roanoke*, 813 F.2d 1183 (11th Cir.1987), the present case does not implicate *Parratt*. *See also Patterson v. Coughlin*, 761 F.2d 886, 892–93 (2d Cir.1985), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). In *Fetner*, the City Council possessed the authority to deprive Fetner of his property interest in continued employment. Similarly here, the state has clothed the appellees with the authority to deprive Burch of his liberty by enabling them to determine whether Burch had given his voluntary, knowing, and express consent for admission. In contrast, in *Parratt* and similar cases, the defendants *lacked* state-clothed authority to deprive the plaintiffs of their protected property interests.

This Court recognized in *Fetner* that government officials abuse their state-clothed authority in depriving a person of a constitutionally protected interest when a predeprivation hearing is practicable. This conclusion is consistent with *Parratt*. As this Court recognized in *Fetner*, "[t]he touchstone in *Parratt* was the impracticability of holding a hearing prior to the claimed deprivation."[9] 813 F.2d at 1185. Thus, "[p]ost-deprivation remedies do not provide due process if predeprivation remedies are practicable." *Id.* at 1186. In the present case, predeprivation procedures were practicable and thus postdeprivation remedies cannot provide due process.

---

**8.** Because Burch does not allege that Florida's statutorily-prescribed procedures are constitutionally inadequate, we assume, without deciding, that they meet the requirements of procedural due process.

We are mindful that *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), holds that the Eleventh Amendment bars a federal court from granting relief against state officials on the ground that they violated state law. Florida's statutorily-prescribed procedures, however, have two independent sources: the United States Constitution and the Florida legislature. The Due Process Clause of the United States Constitution would still require some procedures for protecting liberty interests even if Florida's legislature had not prescribed any.

Thus, we use Florida's procedures for illustrative purposes only and ground our holding in the procedures required by the Due Process Clause.

**9.** The requirement of "impracticability" is coextensive with *Parratt's* requirement that the conduct be "random and unauthorized." We read *Parratt* and its progeny to define "random and unauthorized" conduct as conduct of a state actor who *lacks* the state-clothed authority to deprive persons of constitutionally protected interests. In contrast, the conduct complained of in the present case is not within the meaning of "random and unauthorized" as introduced by *Parratt* and refined by its progeny, but rather involves an abusive use of state-clothed authority.

*Fetner* teaches that a predeprivation hearing is practicable when officials have both the ability to predict that a hearing is required *and* the duty because of their state-clothed authority to provide a hearing. Similarly here, Burch has alleged that the appellees, who possessed state-clothed authority to deprive Burch of his liberty, abused that authority. A predeprivation hearing was practicable because the appellees had both the ability to predict that one was required *and* the duty because of their state-clothed authority to provide one.[10] Consequently, taking Burch's allegations as true, his procedural due process rights were violated after he was committed beyond forty-eight hours without a hearing.

### B. *Deprivation of Liberty*

■ Although we conclude that Burch's complaint alleges a deprivation of liberty without procedural due process of law, we must determine if the deprivation that occurred rises to the level of a cognizable deprivation. The Supreme Court's recent decision in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), serves as an instructive contrast. The Court "conclude[d] that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Id.* at 328, 106 S.Ct. at 663 (emphasis in original). The Court recognized that "abuse of power" was the touchstone for determining whether a deprivation was

cognizable under the Due Process Clause: "Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id.* at 332, 106 S.Ct. at 665. The Court expressly noted that "this case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Id.* at 334 n. 3, 106 S.Ct. at 667 n. 3. .

In the present case, Burch has alleged that the appellees "willful[ly], wanton[ly] and [with] reckless disregard" deprived him of his liberty without due process of law by having him sign forms for voluntary admission and treatment when he was not competent to do so. Although we are mindful that plaintiffs cannot simply invoke such talismanic allegations to escape *Daniels'* reach, we hold that Burch has alleged a deprivation in the constitutional sense. As discussed below, Burch's deprivation of liberty stems from the abuse of power that the Due Process Clause and Section 1983 seek to deter.

### C. *State Action/Under Color of State Law*

■ In a Section 1983 action predicated on a violation of the plaintiff's due process

---

**10.** Such a conclusion is consistent with the Supreme Court's reasoning in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In the course of its decision, the Court rejected Palmer's contention

> that, because an agent of the state who intends to deprive a person of his property *"can* provide predeprivation process, then as a matter of due process he must do so." This argument reflects a fundamental misunderstanding of *Parratt*. There we held that postdeprivation procedures satisfy due process because the *state* cannot possibly know in advance of a negligent deprivation of property. Whether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process.

*Id.* at 534 (citation omitted) (emphasis in original).

We read *Hudson v. Palmer* as saying that state officials' ability to predict the need for predeprivation process (i.e., *"can* provide predeprivation process") does not remove the case from *Parratt's* reach. Rather, *Hudson v. Palmer* requires that "the *state* [be] in a position to provide for predeprivation process." In the present case, the state is in the position to provide predeprivation process. The state has clothed the appellees with the state's power to deprive persons of their liberty, and accordingly has clothed the appellees with the state's concomitant duty under *Addington* to provide predeprivation process. Where, as here, the state has reposed its power and concomitant duty with state officials, state officials act *as* the state and thus the state is in a position to provide for predeprivation process. *Hudson v. Palmer* thus does not apply to the facts as alleged in Burch's complaint.

rights, a showing of state action serves a two-fold purpose. State action is necessary to establish the deprivation of the plaintiff's due process rights, and, when present, is also sufficient to meet the under-color-of-state-law requirement of Section 1983 itself. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982) (quoting *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753–54). The deprivation is "fairly attributable" to the state "when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754 (citing *Monroe v. Pape*, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961)). Specifically, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" constitutes state action for the purposes of the Fourteenth Amendment. *See Lugar*, 457 U.S. at 929, 102 S.Ct. at 2749–50 (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)).

In the present case, we conclude that state action exists.[11] The appellees' actions are fairly attributable to the state because only by being clothed with the authority of state law did the appellees possess the power to commit a person to a mental institution if that person provided voluntary, express, and informed consent. The appellees deprived Burch of his liberty in a way not available to a private citizen.[12] Taking Burch's allegations as true, the appellees abused their state-clothed power by committing Burch to a mental institution without a hearing and without his voluntary, express, and informed consent.

We conclude that Burch's allegations that persons acting under color of state law deprived him of his liberty without due process of law state a procedural due process claim upon which relief could be granted. We express no view, however, as to whether in fact Burch is entitled to relief.

REVERSED and REMANDED to the district court for further proceedings not inconsistent with this opinion.

JOHNSON, Circuit Judge, specially concurring in which VANCE, KRAVITCH, HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge, join:

I write separately to set forth why I believe Burch's complaint has actually raised a claim for a substantive due process violation and why, on the merits, Burch has stated a claim upon which relief could be granted for such a violation. Substantive due process claims "are outside the scope of *Parratt* because the constitutional violation is complete at the moment when the harm occurs. The existence of state postdeprivation remedies therefore has no bearing on whether the plaintiff has a constitutional claim." *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir. 1985) (en banc), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). A liberal construction of the pleadings indicates that Burch has sufficiently raised a claim for a substantive due process violation. Significantly, paragraphs 13 and 28 of the complaint allege that the appellees "deprived Plaintiff of his liberty without due process of law in contravention of the Fourteenth Amendment to the United

---

11. We express no view on whether, if liberally construed, Burch's complaint, through the incorporation of Exhibit G, alleges deprivation of Burch's liberty pursuant to an established state practice of not following the commitment procedures required by due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

12. Such a conclusion distinguishes those Section 1983 cases seeking recovery based upon mere torts of state officials. In the present case, the appellees could only injure Burch because they abused the power given them as state officials; private citizens alone had no power to commit Burch for 152 days.

States Constitution." This allegation can encompass both substantive and procedural due process violations; Burch does not allege only deprivation of liberty "without *procedural* due process of law."

In addition, paragraphs 9 and 27 contain allegations of specific actions by the appellees that, if true, state a claim upon which relief could be granted for a substantive due process violation.[1] In these two paragraphs, Burch alleges that he was detained and treated against his will for 152 days without any judicial determination that the state properly could detain and treat him.

In *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the Supreme Court held that a state's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial violated the Fourteenth Amendment's due process requirement. From the *Jackson* reasoning, especially here in light of the state's extended deprivation of Burch's liberty, I would conclude that, when the state held and treated Burch beyond a reasonable time after which a hearing should have been held, Burch's detention and treatment gave rise to a claim for a substantive due process violation. I ground this conclusion in the belief that the governmental action of which Burch complains belongs to the species of conduct that is unjustified because it is, in and of itself,

antithetical to fundamental notions of due process. *See Gilmere*, 774 F.2d at 1499.[2]

One final observation is in order. This Court recently noted that "a litigant proceeding in good faith has a right to use civil discovery in [an] attempt[ ] to prove the existence of a colorable claim for relief." *Collins v. Walden*, 834 F.2d 961, 965 (11th Cir.1987). Today, this Court determines that Burch has stated a claim upon which relief could be granted for a procedural due process violation and thus has remanded the case to the district court. On remand, if Burch's use of the discovery process produces evidence to support a claim for a substantive due process violation, he has the right to amend his pleadings so that his pleadings conform with this evidence.

CLARK, Circuit Judge, concurring:

I concur in Judge Johnson's comprehensive opinion. I write separately to express additional reasons why I conclude that the district court's opinion should be reversed. First, this case is controlled by *Logan v. Zimmerman Brush Company*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), and not by *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), or *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Logan* held that a postdeprivation state remedy does not satisfy "due process where the

---

1. Paragraph 9 provides:

   Defendant [Apalachee Community Mental Health Services, Inc.] confined and imprisoned Plaintiff against his will from December 7, 1981 to December 10, 1981. Without authorization from Plaintiff, Defendant ACMHS examined and treated him during the same period and administered heavy medications to him with force and duress. Plaintiff was not represented by counsel and no hearing of any sort was held at which he could have challenged his involuntary commitment and treatment.

   Paragraph 27 provides:

   Defendants [Florida State Hospital employees], and each of them, knew or should have known that Plaintiff was incapable of voluntary, knowing, understanding and informed consent to admission and treatment at FSH. See Exhibit G attached hereto and incorporated herein. Nonetheless, Defendants, and each of them, seized Plaintiff and against Plaintiff's will confined and imprisoned him and sub-

jected him to involuntary commitment and treatment for the period from December 10, 1981, to May 7, 1982. For said period of 149 days, Plaintiff was without the benefit of counsel and no hearing of any sort was held at which he could have challenged his involuntary admission and treatment at FSH.

2. Although during the en banc oral argument Burch's attorney stated in response to questioning that "I don't know that I have alleged any violations of substantive rights," follow-up questioning revealed that the complaint and its incorporated exhibits contained allegations of substantive due process violations. This follow-up colloquy is consistent with my conclusion that, when the state held and treated Burch beyond a reasonable time after which a hearing should have been held, Burch's detention and treatment gave rise to a claim for a substantive due process violation.

property deprivation is affected pursuant to an established state policy." Second, in addition to the deprivation of procedural due process right guaranteed by the Fourteenth Amendment, Burch was deprived of explicitly articulated freedoms contained in the Bill of Rights—his Fourth Amendment right "to be secure in [his] person[ ]" and to be free from seizure and detention without due process of law and his Fifth Amendment right not to be "deprived of life, liberty or property without due process of law."[1]

## I.

Any study of the progeny of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), must include consideration of *Hudson* and *Logan.* Those cases provide the framework for analyzing procedural due process claims like Burch's.

In *Hudson,* Palmer, a prisoner, alleged that Hudson had conducted a shakedown search of his cell and intentionally destroyed certain non-contraband personal property. Palmer claimed that he was entitled to damages under § 1983. The Supreme Court held that Palmer did not state a claim under § 1983 and that the reasoning in *Parratt* with respect to negligent deprivations of property applied also to intentional deprivations of property. The defendants in this case compare their deprivation of Burch's liberty to Hudson's deprivation of Palmer's property. Palmer contended that his case was controlled by the

"established state procedure" language in *Logan,* arguing that:

> the deliberate destruction of his property by petitioner constituted a due process violation despite the availability of postdeprivation remedies. Brief for respondent and cross-petitioner at 8. In *Logan,* we decided a question about which our decision in *Parratt* left little doubt, that is, whether a postdeprivation state remedy satisfies due process where the property deprivation *is effected pursuant to an established state procedure.* We held that it does not. *Logan* plainly has no relevance here.

*Hudson,* 468 U.S. at 534, 104 S.Ct. at 3204 (emphasis added). The irrelevance of *Logan* to Palmer's case was explained by an earlier statement in *Hudson:* "Two Terms ago, we reaffirmed our holding in *Parratt* in *Logan* ... in the course of holding that postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." *Id.* at 532, 104 S.Ct. at 3203.

The pointed inquiry in this case is whether the defendants' deprivation of Burch's liberty was effected pursuant to an established state procedure. If it was not, this would be a *Hudson*-type case.[2] There was no "established state procedure" authorizing Hudson's deprivation of Palmer's property.

Since Burch was detained by the defendants pursuant to "an established proce-

---

1. In *Hudson,* the Court discussed the application of the Fourth Amendment. Justice O'Connor, in her concurring opinion, made reference to the constitutional sources that provide protection to the property of citizens: "Those sources are the due process and the takings clauses of the Fifth and Fourteenth Amendments, not the search and seizure clause of the Fourth Amendment." *Hudson,* 468 U.S. at 540, 104 S.Ct. at 3207 (O'Connor, J., concurring). For the purposes of deciding this case, it is not necessary for us to identify whether Burch's constitutional right derived from the Fourth or Fifth Amendments. Suffice it to say that the dissent is incorrect in urging that Burch had no constitutional right other than the right to procedural due process provided by the Fourteenth Amendment.

2. The dissent argues that "the fact that the defendants acted in contravention of their duties under state law only reinforces the conclusion that the acts of deprivation were random and unauthorized," Dissent, *infra* at 812. The defendants did not kidnap Burch as a random act in violation of their duties as citizens under state law. Their deprivation of Burch's freedom was authorized and done in the course of their employment as mental health professionals acting under color of and pursuant to Florida law. Their responsibility and consequent liability under § 1983 is no different from that of police officers who search a citizen's home, arrest the citizen and detain him at the jail, all without a warrant or proceeding before a magistrate. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

dure" set forth in Florida's Mental Health statute, this case is controlled by *Logan*. To see why, it is necessary to analyze that case. Logan filed a timely complaint with the Illinois Fair Employment Practices Commission. Pursuant to a state statute, the commission had to convene a fact-finding hearing within 120 days of the filing of the complaint. "Apparently through inadvertence," the commission scheduled a hearing 5 days after the expiration of the statutory 120–day period. 455 U.S. at 426, 102 S.Ct. at 1152. The Illinois Supreme Court held that the commission's failure to hold the hearing within the 120–day period deprived it of jurisdiction to hear the merits of Logan's complaint. In an opinion by Justice Blackmun, a *unanimous* Supreme Court held that Logan's due process rights had been violated and as a consequence he was deprived of a protected interest, his claim to his job. The *Logan* Court rejected the argument that *Parratt* was controlling, notwithstanding the fact that Illinois provided postdeprivation tort remedies which Logan could have pursued:

> This argument misses *Parratt's* point. In *Parratt*, the Court emphasized that it was dealing with "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure." 451 U.S., at 541, 101 S.Ct., at 1915. Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation. *See id.,* at 545, 101 S.Ct., at 1918 (second concurring opinion). Unlike the complainant in *Parratt*, Logan is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards.

*Id.* at 435–36, 102 S.Ct. at 1158.

As in *Logan*, the Florida state officials in this case were required by state law to secure a due process hearing and were not authorized to detain Burch without securing the hearing. As in *Logan*, the failure of the Florida officials to arrange for a hearing was a deprivation of an "established state procedure." As in *Logan*, this failure caused a deprivation of a Fourteenth Amendment right, and a § 1983 claim can be pursued. *Cf. Patterson v. Coughlin*, 761 F.2d 886, 892 (2d Cir.1985) (failure of state officials to provide inmate with a proper hearing was neither random nor unauthorized as those terms were meant in *Parratt*).

The Ninth Circuit, sitting en banc, recently recognized that "the *Parratt* analysis, in which the touchstone for predeprivation process is the feasibility of providing such process, is simply inapplicable where the alleged deprivation is inextricable from the alleged corruption of the process which the state ordinarily could provide.... It is meaningless to speak of the state's ability to provide postdeprivation remedial process where the state process itself has been abused." *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir.1985) (en banc). *Parratt* is therefore inapposite. Because Florida state law required a hearing within 48 hours of the initial confinement, state officials "were in a position to provide for predeprivation process." *Hudson v. Palmer*, 468 U.S. at 534, 104 S.Ct. at 3204.

The argument that *Logan* is controlling is made even more persuasive when one considers that the defendants in *Parratt* (loss of hobby kit), *Daniels*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (inmate's slip on pillow), and *Davidson*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (negligent failure to protect inmate), were not required to do anything by state law; like many state actors and all citizens, they simply were not authorized to deprive persons of their constitutional rights. *Logan* is the only post-*Parratt* case in which the Supreme Court has considered a due process claim arising out of state officials' failure to hold a hearing as required by state law. As such, it should provide the guiding principle in this case, where the failure of Florida state officials to provide

Burch with the required hearing led to a six-month deprivation of liberty.

## II.

Burch alleged in paragraph 13 of this complaint "Defendant ACMHS deprived Plaintiff of his liberty without due process of law in contravention of the Fourteenth Amendment to the United States Constitution." Part II of the dissent is directed toward the suggestion in Judge Johnson's concurrence that Burch suffered a "substantive due process violation." I do not reach this question because the complaint clearly alleges a violation of Burch's liberty interest. As so precisely articulated by Justice Blackmun, who authored *Logan*, "At the outset, then, we are faced with what has become a familiar two-part inquiry: we must determine whether Logan was deprived on a protected interest, and if so, what process was his due." *Logan*, 455 U.S. at 428, 102 S.Ct. at 1153–54.

The first inquiry is whether Burch had a protected interest. Urging that the majority makes no attempt to explain where in the Bill of Rights the framers may have implicitly articulated this right, the dissent asks this question: "[D]id they implicitly articulate it in the Fourth Amendment, which provides that '[t]he right of people to be secure in their persons ... against unreasonable searches and seizures shall not be violated'?" Dissent, *infra* at 816.

The dissent's concerns are easily answered, for the Fourth Amendment was clearly implicated by the seizure and detention of Burch.

> Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common law antecedents.... Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary actions subside, the suspect's need for a neutral determination of probable cause

increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships.... When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

*Gerstein v. Pugh*, 420 U.S. 103, 111, 114, 95 S.Ct. 854, 861, 863, 43 L.Ed.2d 54 (1975).

In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court establishes as clear precedent that Burch's liberty interest was such that it could not be taken without a probable cause finding:

> By virtue of its "incorporation" into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The probable-cause determination "must be made by a judicial officer either before or promptly after arrest." *Id.* at 125, 95 S.Ct. at 869.

443 U.S. at 142–43, 99 S.Ct. at 2694. Baker was held in jail for three days because of a mistaken identification. His arrest was pursuant to an arrest warrant issued by a magistrate which provided sufficient probable cause to hold him the three days. Burch was provided with no probable cause hearing.

Florida, through its statute, gave the defendants the authority to deliberately deprive Burch of his liberty, just as it authorized police officers in Dade County to arrest Pugh and deprive him of his liberty. The Florida statute authorizing such action on the part of the defendants, however, also required those defendants to afford Burch a due process hearing before an

impartial magistrate. Dissenting in *Parratt*, Justice Powell stated that § 1983 "was enacted to deter real *abuses* by state officials in the exercise of governmental powers." 451 U.S. at 549, 101 S.Ct. at 1920 (emphasis in original). Such an abuse occurred here.

If the philosophy of the dissent were to prevail, 42 U.S.C. § 1983 would be repealed by judicial fiat. Section 1983 guarantees a citizen access to the federal court system when state officials deprive him of a federal constitutional right without affording him a predeprivation or prompt postdeprivation procedural due process hearing. The Supreme Court has not repealed § 1983 and neither should we.

ANDERSON, Circuit Judge, concurring specially in which Godbold, Senior Circuit Judge, joins:

I.

I agree with the result reached in Judge Johnson's opinion for the plurality—i.e., that Burch has sufficiently stated a claim of a procedural due process violation—but I cannot join Judge Johnson's reasoning as to why *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), does not apply to bar the instant case. Instead, I rely upon the reasoning set out in Part II. On the substantive constitutional issue, I agree with the result reached in Judge Tjoflat's opinion—i.e., that Burch has neither alleged a substantive constitutional violation nor intended to do so—but I cannot join all of Judge Tjoflat's reasoning. Instead, I rely upon the reasoning set out in Part III.

II.

In my judgment, the reason that *Parratt* does not apply is that Burch has sufficiently alleged a deprivation pursuant to an established state procedure. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Burch alleged that each defendant "took part in admitting plaintiff ... as a 'voluntary' patient," that at the time of admission plaintiff was "disoriented, semi-mute, confused and bizarre in appearance and thought," that defendant's actions were taken "under the color and pretense of the statutes, ordinances, regulations, *customs* or *usages* of the State of Florida" and that each of the defendants "knew or should have known that plaintiff was incapable of voluntary, knowing, understanding and informed consent to admission." Burch attached to the complaint Exhibit G, a letter from the Florida Department of Health and Rehabilitative Services, which provided: "This matter was discussed at the Human Rights Advocacy Committee for Florida State Hospital Meeting on August 4, 1983, and hospital administration was made aware that they were very likely asking medicated patients to make decisions at a time when they were not mentally competent."

In the current Rule 12(b)(6) posture of this case, the test of course is whether it is beyond doubt that Burch can prove *no* set of facts which would establish a procedural due process violation. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). One such possible set of facts, as gleaned from Burch's allegations, is that at the two hospitals involved in this case there was an established custom or practice of obtaining voluntary consent forms when the patient was clearly not competent to consent.[1] Far from being "beyond doubt,"

---

1. Not only was this theory adequately alleged, it was also fairly presented to the district court. The applicability of *Parratt* was the major focus of the litigation at this early stage in the district court proceedings. Moreover, the "established state procedure" issue was specifically addressed. Burch's April 8, 1985, memorandum in response to defendant's motion to dismiss mentioned the established procedure theory several times. Record on Appeal, Document 16. In response, one of the defendants filed a supplemental memorandum arguing: "However,

the post-deprivation remedies provided by Florida law are sufficient because the complaint does not allege a deprivation 'pursuant to some established state procedure.' *Parratt*, 451 U.S. at 537 [101 S.Ct. at 1913–14]." Record on Appeal, Document 21 at 2. In response thereto, Burch filed a memorandum arguing:

Defendant ACMHS argues there is no policy under which its employees functioned with respect to admissions procedures. Yet the policy under which plaintiff was admitted to both ACMHS and FSH was not only acknowl-

such a practice is entirely conceivable, and perhaps all too tempting.

It is clear that such an established practice can constitute the kind of established state procedure contemplated in *Logan*, removing the element of randomness which is required for the application of the *Parratt* bar. In *Wright v. Newsome*, 795 F.2d 964 (11th Cir.1986), a state prisoner asserted that he was deprived of property when prison officials confiscated and destroyed some of his legal materials during a search of his cell. He asserted that similar confiscations had taken place in the past, in the face of court orders to the contrary and despite notice to the warden. This court concluded that "it could be inferred that searches and consequent confiscations unaccompanied by procedural safeguards are the sanctioned standard operating procedure at the [prison]." *Id.* at 967. The court held that Wright had sufficiently alleged that the deprivation of his property was pursuant to an established state procedure and thus that *Parratt* was not applicable. *Accord Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir.1985) (in banc) (where prison officials miscalculated by five years prisoner's incarceration terms by employing formulae in a manner consistent with standard operating procedures, *Logan* rather than *Parratt* applies; "[w]here the injury is the product of the operation of state law, regulation, or institutionalized practice, it is neither random nor unautho-

rized, but wholly predictable, authorized, and within the power of the state to control"); *Augustine v. Doe*, 740 F.2d 322 (5th Cir.1984) (if plaintiff could establish that police had official policy of arresting and detaining suspects without probable cause and of confiscating suspects' property, then police actions constitute established state procedure and *Logan* applies).

Accordingly, I conclude that Burch has adequately alleged a claim of a procedural due process violation.

### III.

I am not persuaded that Burch has alleged a substantive constitutional violation, or that he has intended to do so.

At oral argument to the in banc court, Burch candidly acknowledged that he had made no such claim.

Even liberally construed, a fair reading of the complaint alleges no substantive due process violation. The allegations of the complaint make it clear that Burch was seriously mentally ill. The law is clear that the State can confine such mentally ill persons, *if* appropriate procedural due process is afforded. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

Thus, I conclude that Burch has alleged only a procedural due process claim, not a substantive due process claim. There is no suggestion in the complaint that Burch was

edged by the Florida Department of Health and Rehabilitative Services, the overseer of both entities, but eschewed. (See Plaintiff's Exhibit G attached to the Complaint with a copy attached hereto)....

Now, defendant ACMHS asks this court to accept the proposition that irrespective of the fact that it regularly accepts persons as voluntary and involuntary admissions and regularly employs the above-referenced policy, it has no policy with respect to such admission procedures. Defendant ACMHS cannot claim the protection of established procedures for one purpose and deny the existence of those procedures for another.

Record on Appeal, Document 20. The memorandum again attached Exhibit G which indicated that the hospital was "very likely asking medicated clients to make decisions at a time when they were not mentally competent."

The issue was also fairly presented on appeal. Burch argued to the original panel that the

Florida Department of Health and Rehabilitative Services had "conceded that the established procedure being used to admit medicated and disoriented patients ... by using involuntary admission and treatment forms was inappropriate and in violation of patient's rights." Brief at 9. *See also* Reply Brief at 5 ("ACMHS had an established custom of admitting and transferring incompetent patients on the basis of voluntary admission forms," citing Exhibit G that the hospitals "were very likely asking medicated clients to make decisions at a time when they were not mentally competent."). Similarly, in his brief to the in banc court, Burch argued "that the defendants were acting pursuant to an institutionalized practice in their reliance on consent to commitment and treatment forms signed by persons who did not possess the capacity to give knowing and informed consent.... Such an institutionalized practice by defendants would also take Burch's claim outside the scope of *Parratt*." Brief at 12.

confined for political or other malevolent reasons or that there was other such abuse of state power that would "shock the conscience." *Gilmere v. City of Atlanta, Ga.,* 774 F.2d 1495, 1500 (11th Cir.1985) (in banc) (quoting from *Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952).

TJOFLAT, Circuit Judge, dissenting in which RONEY, Chief Judge, and HILL, FAY and EDMONDSON, Circuit Judges, join:

This opinion is intended to serve two purposes. First, I dissent from the majority's holding that Burch has stated a claim for relief on procedural due process grounds. Second, I write separately to respond to the suggestion by some members of this court that Burch's complaint states a substantive due process claim.

I.

In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prison warden negligently lost a hobby kit which a prisoner had ordered through the mail. The prisoner sought relief in federal court under 42 U.S.C. § 1983 (1982), alleging that he had been deprived of his property without due process of law. The Supreme Court first concluded that the plaintiff had suffered a deprivation of property in the fourteenth amendment sense, and then turned to the question of what process was due. The Court noted that the State had been foreclosed from providing a predeprivation hearing because the deprivation had resulted from "a random and unauthorized act by a state employee," *id.* at 541, 101 S.Ct. at 1916, not an "established state procedure." *Id.* at 543, 101 S.Ct. at 1917. The Court observed that a deprivation such as the one suffered by the plaintiff "is in almost all cases beyond the control of the State." *Id.* at 541, 101 S.Ct. at 1916. Indeed, the Court observed, "the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Id.* at 543, 101 S.Ct. at 1917. In light of these circumstances, the Court concluded that the tort claims procedure available under state law provided all the process that the plaintiff was constitutionally due. Thus, although the plaintiff had suffered a deprivation of a protected interest, no constitutional violation had occurred. Accordingly, the plaintiff had failed to state a claim for relief under section 1983.

Properly understood in light of *Parratt,* our task in this case is threefold. We must first identify the nature of the deprivation that Burch has alleged. If we conclude that Burch has alleged a deprivation within the meaning of the fourteenth amendment, i.e., a deprivation of life, liberty, or property, we must then determine, guided by *Parratt,* whether the deprivation occurred in a manner such that the state would have been unable to provide Burch with predeprivation process. If we find that the state had no real opportunity to provide predeprivation process, we must determine whether available state tort claims procedures are sufficient to provide the process required by the fourteenth amendment.

It cannot be disputed that involuntary mental institutionalization at some point constitutes a deprivation of a protected liberty interest. *See Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed. 2d 323 (1979). We can assume here that Burch was involuntarily institutionalized by persons acting under color of state law and that Burch has alleged a deprivation of liberty in the fourteenth amendment sense.[1] As emphasized above, however, such an allegation, standing alone, is insufficient to state a claim for relief under

---

1. I assume only that Burch's *confinement* constituted a deprivation of liberty in the fourteenth amendment sense. The fact that Burch may have been denied the statutory procedures prescribed by Fla.Stat. § 394.463 (1981) (amended 1984) does not implicate any interest cognizable under the fourteenth amendment. Burch may of course have a colorable claim that the defendants failed to follow the statutory procedures. But the eleventh amendment bars a federal court from granting relief against state officials on the ground that they violated state law. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

section 1983. We must additionally find that Florida has foreclosed Burch from receiving that measure of process to which he is constitutionally entitled in light of the deprivation.

Given the nature of the acts that precipitated the deprivation in this case, it is difficult to see how the State had any more opportunity to provide predeprivation process than did the State in *Parratt*. As the plurality notes, Florida law establishes certain statutory procedures governing involuntary commitment. *See* Fla.Stat. § 394.463 (1981) (amended 1984). The Florida legislature designed these procedures to ensure that persons would not be wrongly deprived of liberty. The deprivation alleged by Burch was suffered at the hands of state employees acting in contravention of the statutory procedures. The State

surely could not anticipate that its employees would act in a manner contrary to its express command. Thus, like the warden's actions in *Parratt*, the employees' actions here were "beyond the control of the State" and "random and unauthorized." And, like the deprivation in *Parratt*, the deprivation here "occurred as the result of the unauthorized failure of agents of the State to follow established state procedure." The conclusion that the State here, like the State in *Parratt*, had no real opportunity to provide predeprivation process therefore seems inescapable.

The plurality[2] struggles to avoid this conclusion by arguing that the defendants in this case had "state-clothed authority" to deprive Burch of his liberty. The plurality apparently reasons that since the defendants were required by Florida law to ob-

---

**2.** Although eight of the thirteen members of the en banc court agree with Judge Johnson's conclusion that Burch's complaint states a procedural due process claim for relief, only six judges have joined in Judge Johnson's opinion. Judge Anderson, joined by Judge Godbold, would hold that Burch has stated a claim for relief on procedural due process grounds because he "has sufficiently alleged a deprivation pursuant to an established state procedure." *Ante* at 808 (Anderson, J., specially concurring).

If Burch's complaint did in fact contain such an allegation, I would agree that the *Parratt* analysis does not apply. I do not agree, however, with Judge Anderson's reading of the complaint. Judge Anderson relies heavily on a letter that Burch appended to his complaint as "Exhibit G." That letter, sent to Burch by the Florida Department of Health and Rehabilitative Services, indicates that the administration of the Florida State Hospital had been "made aware that they were very likely asking medicated patients to make decisions at a time when they were not mentally competent."

This letter is an insufficient basis for reading Burch's complaint as making an allegation that he was wrongfully confined pursuant to an "established state procedure." To begin with, the letter does not say that the alleged error was common or routine. Nor does it show that the State condoned the behavior; indeed, it shows precisely the contrary. Moreover, it is highly questionable whether the exhibits attached to Burch's complaint can even be characterized as comprising part of Burch's allegations. Such exhibits are best characterized as evidence of the allegations presented in the typed complaint, and evidentiary matter of this kind can and should be deleted from the pleadings. *See*

*In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1169 (5th Cir.1979); *Control Data Corp. v. International Business Machs. Corp.*, 421 F.2d 323, 326 (8th Cir.1970).

Even assuming that evidentiary exhibits, properly cross-referenced, can be viewed as part of the allegations in a complaint, nothing in Burch's typed complaint directed the district judge's attention to the specific sentence that Judge Anderson identifies as critical. The typed complaint referred to Exhibit G only in the following manner: "Para. 27. Defendants, and each of them, knew or should have known that Plaintiff was incapable of voluntary, knowing, understanding and informed consent to admission and treatment at [Florida State Hospital]. See Exhibit G attached hereto and incorporated herein." The letter evidences the allegation in paragraph 27 because it contains the statement that Burch was "probably not competent to be signing legal documents" at the time of his admission to Florida State Hospital. Thus, in the single instance where the typed complaint contained a cross-reference to Exhibit G, the allegation being made was *not* that Burch was wrongfully confined pursuant to some established state procedure, but rather that Burch was incompetent to sign a consent form.

At some point, the liberality of construction afforded pleadings must be circumscribed by the "plain statement" rule of Fed.R.Civ.P. 8(a). The vague sentence that Judge Anderson identifies as critical was buried in the more than twenty pages of evidentiary exhibits attached to Burch's complaint. In this context, it is patently unrealistic to expect the district judge to have seized upon that sentence and to have imagined that it set forth an allegation that the defendants' conduct was so customary as to make the *Parratt* analysis inapplicable.

serve certain predeprivation procedures,[3] their failure to do so somehow made their actions neither "random" nor "unauthorized" as those terms are used in *Parratt.*[4] The logic of this argument escapes me. It could not be clearer that nothing in Florida law "authorized" the defendants to deprive persons of protected interests. Indeed, as already noted, the Florida legislature had established a detailed scheme designed to protect against such deprivations. To my mind, the fact that the defendants acted in contravention of their duties under state law only reinforces the conclusion that the acts of deprivation were random and unauthorized.

The controlling inquiry under *Parratt,* which the plurality takes great pains to finesse, is whether the *State* could have anticipated the acts of deprivation such that it would have been in a position to provide predeprivation process. The State simply cannot anticipate acts of deprivation by state employees acting in contravention of their express duties under state law. *See Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 199 (6th Cir.1987).[5]

3. In focusing on the commitment procedures that Florida has statutorily prescribed, the plurality confuses two distinct due process concepts. A focus on state law would be appropriate were we in the position of a reviewing court deciding whether to order the release of a person being confined pursuant to an order issued under state law. In such a case, we would examine the procedures pursuant to which the confinement had been effected; if those procedures did not comport with the requirements of due process, we would issue an order requiring that the person be afforded a new hearing incorporating the procedures required by the Constitution. *Cf. Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

This case presents a due process issue of a wholly different nature. Burch, now released, claims that he was deprived during his confinement of a liberty interest by state employees who did not follow certain confinement procedures mandated by state law. Presented with such a claim, our task as directed by the Supreme Court is to determine whether, given the manner in which the alleged deprivation occurred, available postdeprivation redress in state court would provide Burch all the process he is due under the fourteenth amendment. If it would, *Parratt* tells us that no constitutional violation has occurred: the State has not denied Burch the *process* to which he is constitutionally *due.* Under clear Supreme Court precedent, *see supra* note 1, the fact that the state employees may have violated a state law in connection with the deprivation cannot support Burch's effort to state a section 1983 claim.

4. By discussing whether the deprivation was "random" and "unauthorized" as those terms are used in *Parratt,* the majority implicitly accepts the notion that *Parratt* can apply to deprivations of liberty as well as deprivations of property. As the panel noted in its opinion, there is no basis for treating deprivations of life, liberty, and property differently insofar as the due process requirements of the fourteenth amendment are concerned. *See Burch v. Apalachee Community Mental Health Servs.,* 804 F.2d 1549, 1554 (11th Cir.1986). This view is consistent with *Lynch v. Household Fin. Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), wherein the Supreme Court stated that

the dichotomy between personal liberties and property rights is a false one. Property does not have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a personal right, whether the 'property' in question be a welfare check, a home, or a savings account.

*Id.* at 552, 92 S.Ct. at 1122. In *Parratt* itself, the Supreme Court relied on a case involving a liberty deprivation. *See Parratt,* 451 U.S. at 542–43, 101 S.Ct. at 1916–17 (citing *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

5. Like the present case, *Vinson* involved a section 1983 action brought by a plaintiff claiming to have been falsely imprisoned as the result of conduct by a state employee acting in contravention of a duty imposed by the State. In *Vinson,* a probation officer employed by a county juvenile services department procured a summons requiring the plaintiff to appear at a hearing regarding her children's failure to attend school. The probation officer procured the summons in a manner that allegedly violated state law. The plaintiff did not comply with the summons, and was subsequently arrested for failing to appear at the hearing. She was confined for ten days and then released. Upon her release, she brought suit in federal district court, alleging *inter alia* that she had been deprived of procedural due process with respect to her confinement. The district court dismissed the claim, holding that (1) the state could not have anticipated the probation officer's actions, and (2) the plaintiff could file in state court an action for false imprisonment or abuse of process.

The Sixth Circuit, relying on *Parratt,* affirmed this part of the district court's ruling. The court of appeals reasoned that "the state could not have predicted that the [summons] procedure would not be followed and was in no position to provide predeprivation process because [the probation officer's] procurement of the alleg-

The line of reasoning the plurality uses to hold otherwise was expressly rejected by the Supreme Court in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Hudson,* the Court made the following observations:

> [the respondent] contends that, because an agent of the state who intends to deprive a person of his property '*can* provide predeprivation process, then as a matter of due process he must do so.' ... This argument reflects a fundamental misunderstanding of *Parratt.* There we held that postdeprivation procedures satisfy due process because the *state* cannot possibly know in advance of a negligent deprivation of property. *Whether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process.*

*Id.* at 535, 104 S.Ct. at 3204 (emphasis added).

Our recent decision in *Fetner v. City of Roanoke,* 813 F.2d 1183 (11th Cir.1987), is consistent with *Hudson. Fetner* involved a city council's termination of a city employee. The employee sued under section 1983, alleging that he had been deprived of a protected property interest without due process. The court concluded that *Parratt* did not apply. As the court noted, the termination was an "act of the City's highest governing board." *Id.* at 1185. Thus, since the city council members were the final policymakers with respect to termination policy, the acts precipitating the alleged deprivation were plainly neither ran-

dom nor unauthorized. Accordingly, the council members had "ample time to give [the employee] notice and offer him an opportunity to be heard before they fired him." *Id.*

Here, in contrast to *Fetner,* the relevant final policymaking function did not reside with the agents whose acts precipitated the deprivation. Indeed, those agents acted in contravention of the stated policy of the relevant final policymaker, in this case the State. Under *Parratt* and *Hudson,* we must ask whether the final policymaker was in a position to anticipate the deprivation and thus provide predeprivation process. I do not see how we could answer that question otherwise than in the negative.

Under *Parratt,* if the State cannot anticipate a deprivation and is therefore unable to provide predeprivation process, state tort claims procedures may accord the plaintiff all the process due him under the fourteenth amendment. I would find that available Florida procedures accord the required measure of process.

If Burch can prove the facts he alleges in his complaint, he will be able to recover damages from defendant Apalachee Community Mental Health Services (ACMHS) under Florida law. Sovereign immunity will pose no obstacle; Florida has partially waived its sovereign immunity in its own courts. *See* Fla.Stat. § 768.28 (1981).[6] With respect to his claims against the Florida State Hospital (FSH) employees, Burch also has available to him state remedies adequate to provide the process due. Fla.

---

edly invalid summons, which resulted in the alleged false imprisonment, was a random and unauthorized act." *Vinson,* 820 F.2d at 199. Thus, the Sixth Circuit has recognized that the key inquiry is whether the *State* could have anticipated the deprivation such that it would have been in a position to provide predeprivation process. More importantly, the Sixth Circuit has rejected the notion, central to the plurality's analysis here, that *Parratt* has no application where the defendant acted in violation of an express duty imposed by state law.

**6.** At the time Burch's cause of action arose, Florida's sovereign immunity law stated as follows:

[a]ctions at law against the state or any of its agencies or subdivisions to recover damages in tort ... for injury ... caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which ... a private person, would be liable to the claimant.

Fla.Stat. § 768.28(1) (1981). The State has since amended the statute, but it adheres to the partial waiver of sovereign immunity.

Stat. § 394.459(13) (1981) provides that "[a]ny person who violates ... [the mental health act] shall be liable for damages." Although the statute excepts from liability persons who acted in good faith, it does not except persons merely because they acted negligently rather than intentionally.[7] Furthermore, Burch has a state law remedy for false imprisonment, *see Johnson v. Weiner*, 155 Fla. 169, 19 So.2d 699, 700 (1944) (person who has been "unlawful[ly] restrain[ed] against his will" has actionable claim for false imprisonment), which, unlike the statutory remedy, has no good-faith limitation.

Thus, I would hold that Burch has failed to state a claim for relief under section 1983. Although he has alleged a deprivation of a protected interest, no constitutional violation has been worked against him because the State has not denied him the measure of process due under the fourteenth amendment.[8]

7. The law also limits the amount of money a claimant can recover from the State, and requires that a plaintiff submit a claim to the State within three years after it arises. None of these limitations, however, is so unreasonable as to deny Burch an "adequate" state remedy. *See Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917 ("Although the state remedies may not provide ... all the relief which may have been available ... under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process.").

8. Judge Clark, concurring in the plurality's opinion, concludes that this case is controlled by the Supreme Court's decision in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). I cannot agree.

*Logan* did not involve a civil rights action brought under 42 U.S.C. § 1983 (1982). *Logan* involved a procedure before the Illinois Fair Employment Practices Commission. Under the Illinois Fair Employment Practices Act, a complainant had 180 days to lodge a charge of employment discrimination with the commission. The commission then had 120 days to convene a factfinding conference. Logan, an aggrieved employee, filed a timely charge, but the commission scheduled the factfinding conference for a date five days after the 120–day period. Logan's former employer then moved the commission to dismiss the complaint on the ground that a timely conference had not been held. The commission denied the motion, and the employer sought a writ of prohibition to prevent the commission from holding the conference and granting relief. The Illinois Supreme Court granted the writ, holding that dismissal of Logan's complaint was required because the 120–day convening requirement was a jurisdictional prerequisite. The supreme court further held that the dismissal, even though it effectively denied Logan his day in court, did not violate any of Logan's rights under the equal protection or due process clauses of the fourteenth amendment.

Logan then appealed the Illinois Supreme Court's decision to the United States Supreme Court. *Logan*, 455 U.S. at 428, 102 S.Ct. at 1153. A proper depiction of the posture of the case before the Supreme Court is as follows: Logan, having been prevented by the Illinois court from prosecuting his employment discrimination claim, was requesting the Supreme Court to hold that the Illinois court system had arbitrarily denied him full use of the adjudicatory procedures established under Illinois law. As the Supreme Court made clear, the issue before it was whether the Illinois *court* had exceeded constitutional limitations by dismissing Logan's complaint. *Id.* at 429, 102 S.Ct. at 1154 ("[T]he Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances."). Reaching the merits, the Supreme Court held that Logan's employment discrimination claim was a constitutionally protected property interest and that Logan was entitled to have his complaint processed. The ruling of the Illinois Supreme Court thus having been reversed, Logan was free to proceed with the prosecution of his claim.

As seen in the light of its true posture, then, *Logan* bears scant resemblance to the present case. This case does not involve a denial of due process by the Florida court system. Burch's complaint is not that the Florida court system denied him due process by, for example, foreclosing him from demonstrating his competence in a competency hearing that had been convened pursuant to state law. If that had been the case, this litigation would have taken a wholly different path: Burch's case, like the case in *Logan*, would have first found its way to the state appellate courts; if they rejected Burch's constitutional claims, he would have appealed to the United States Supreme Court. The question before the Supreme Court would then have been whether the *state court system* had impermissibly interfered with Burch's right to litigate his competence at the competency hearing and thereby secure release from the state hospital.

It should be obvious that *Parratt* is inapplicable in a case presenting that kind of question. Suppose, for the sake of argument, that the Supreme Court in *Logan* had dismissed the appeal on the ground that available state tort procedures provided Logan with all the process that was due. Presumably, the defendants in the contemplated tort action would be those

## II.

Some members of this court would conclude, as an alternative holding, that Burch has been denied a substantive constitutional right. *Ante* at 803 (Johnson, J., specially concurring).[9] For the reasons stated below, I would view such a holding as entirely unwarranted.

First, as the panel noted, Burch never raised a substantive due process claim. *Burch v. Apalachee Community Mental Health Servs.*, 804 F.2d 1549, 1553 (11th Cir.1986). During oral argument before the en banc court, Burch's counsel was asked if the complaint or the documents appended to the complaint contained any allegations that could be characterized as "deprivations of substantive rights." Burch's counsel replied, with commendable candor, "I do not know that I have alleged any violation of substantive rights." After carefully scrutinizing Burch's complaint, I too am unable to discern any such allegations.

Moreover, we are precluded from finding a substantive due process violation to the extent that Burch was mentally ill at the time of his confinement. This court has characterized substantive due process claims as "claims alleg[ing] that [the governmental conduct in question] would remain unjustified even if it were accompanied by the most stringent of procedural safeguards." *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). There can be no question that the State, if it provides appropriate procedures, may confine mentally ill persons. As the Supreme Court

has observed, the State has a legitimate interest in effecting such confinement:

The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.

*Addington v. Texas*, 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Thus, to the extent that Burch was mentally ill at the time of his confinement, he is, under the definition set forth in *Gilmere*, precluded from stating a substantive due process claim.

When Burch was first admitted to ACMHS, he was obviously suffering from a mental illness. In the words of the plurality, he was "hallucinating, confused, disoriented, and clearly psychotic." *Ante* at 799. To state a substantive due process claim, then, Burch would have to allege two things: (1) that he recovered from his illness at some point during his confinement, asked to leave, and was not permitted to leave, and (2) that the State, by not permitting him to leave under such circumstances, violated a substantive right guaranteed Burch under the Constitution.

We can assume for the sake of argument that Burch's complaint adequately alleges that he recovered from his illness at some point during his confinement and was not permitted to leave. In such a case, Burch's complaint would be that he was falsely imprisoned by state employees acting contrary to statutorily prescribed procedures. This allegation, however, would not by it-

persons responsible for the deprivation—the judges whose ruling allegedly denied Logan due process. We can assume an absence of judicial immunity. The basis of the tort action would be that the judges had wrongfully prevented Logan from making full use of the employment discrimination adjudicatory procedures. It is obvious, however, that any such claim would be precluded: since the United States Supreme Court had dismissed Logan's appeal, the Illinois Supreme Court's ruling adverse to Logan would remain in effect and would estop Logan from claiming that he had been wrongfully denied full use of the employment discrimination adjudicatory procedures.

The *Parratt* analysis therefore could not have been intended to apply in cases where, as in *Logan*, the claim is that the state court system has denied the claimant due process and the claimant is seeking relief on appeal to the Supreme Court. In this sense, the due process claim in a case such as *Logan* is analytically indistinguishable from the claim in an appeal from a state conviction where the defendant contends that the trial judge denied him due process by, for example, admitting a coerced confession.

9. Only five members of the thirteen-member en banc court agree with that conclusion.

self be enough to support a substantive due process claim. The fourteenth amendment standing alone does not create a right to be free from false imprisonment by state employees. *See Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2696, 61 L.Ed. 2d 433 (1979) ("[F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."). It may be that such a right can be inferred from one or more of the amendments contained in the Bill of Rights, and is incorporated through the fourteenth amendment so as to be applicable to the states. But where in the Bill of Rights the framers implicitly articulate this right? Did they implicitly articulate it in the fourth amendment, which provides that "[t]he right of people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated"? Or did they implicitly articulate it in the eighth amendment, which provides that "cruel and unusual punishment [shall not be] inflicted"? Or did they somehow articulate it in the first, fifth, or sixth amendments?

Unless the members of the court who would hold that Burch has stated a violation of a substantive right can identify in the Constitution a substantive basis for that right, their analysis breaks down into an argument that substantive due process is implicated whenever an individual acting under color of state law engages in simple tortious conduct. Presented with such conduct, a court need only invoke the "antithetical to fundamental notions of due process" label in order to find a compensable substantive violation. Substantive due process claims under section 1983 thereby take on a dimension wholly independent of the substantive guarantees actually contained in the Constitution, a dimension as broad as the universe of common law tort theory. The Supreme Court has repeatedly admonished us that the fourteenth amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155,

1160, 47 L.Ed.2d 405 (1976). Yet nothing in the proposed analysis would prevent a court from, for example, transforming a garden variety common law libel action against a state employee into a section 1983 substantive due process claim.

The members of the court who would hold that Burch has stated a substantive due process claim apparently rely on this court's en banc decision in *Gilmere v. City of Atlanta*, 774 F.2d 1495 (1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), a case also involving a substantive due process claim in the money damages context. *Gilmere*, I submit, suffers from the same infirmity that I have identified here. *See id.* at 1505 (Tjoflat, J., concurring in part and dissenting in part). In that case, the court created a substantive constitutional right, independent of the fourth amendment, to be free from unreasonable and unnecessary force during police-citizen encounters. The court did so without indicating where in the Bill of Rights it found this substantive guarantee. Rather, the court justified its holding through selective quotations from *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). *See Gilmere*, 774 F.2d at 1500 ("[S]ubstantive due process is violated by state conduct that 'shocks the conscience' or constitutes force that is 'brutal' and such as 'to offend even hardened sensibilities.'") (quoting *Rochin*, 342 U.S. at 172–73, 72 S.Ct. at 209). In my view, the *Gilmere* court clearly read *Rochin* out of context. *Rochin* involved a criminal case in which the defendant's conviction had been based chiefly on evidence pumped from his stomach. The issue before the Supreme Court was *not* whether an individual has a substantive due process right not to have his stomach pumped; rather, it was whether the admission of evidence so obtained rendered the defendant's trial and conviction fundamentally unfair. Accordingly, *Rochin* does not speak to the issue of what kinds of claims would support a damages action based on the denial of substantive due process.[10]

---

10. Furthermore, the *Gilmere* court ignored the historical context in which *Rochin* was decided.

*Rochin* was decided in 1952, nine years before the Supreme Court decided that the fourth

Even under the standards set forth in *Gilmere*, however, Burch's complaint does not state a substantive due process claim. As noted above, the en banc court in *Gilmere* held that an individual can state a claim for damages under section 1983 provided that the state conduct of which he complains is "brutal" and "shocks the conscience." The en banc court cited the following factors as appropriate for determining whether a substantive due process violation has occurred:

> [A] court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Gilmere*, 774 F.2d at 1500–01 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). In the present case, the State provided treatment to an individual who was from all accounts clear-ly psychotic. The individual had been brought to the State by a concerned citizen who found the individual wandering along a highway. It is very difficult for me to see how the State's conduct in confining and treating this individual can be characterized as sadistic, malicious, or shocking to the conscience.[11]

HILL, Circuit Judge, concurring in Judge TJOFLAT's dissenting opinion:

I concur in Judge Tjoflat's dissenting opinion.

Just over a half century ago—in 1936—retaliation like Mr. Burch's suit was ridiculed by the then President of the United States, Franklin D. Roosevelt. In his first reelection campaign that year he spoke in Chicago. He observed that business and commerce had suffered during the depression and he claimed that his New Deal and other recovery policies had been therapeutic for those interests. Noting that what he termed "big business" opposed his reelection, Roosevelt likened that opposition to a patient's throwing his crutches at his doctor.[1]

---

amendment was incorporated through the fourteenth amendment so as to apply to the states. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The result in *Rochin* was the same result that would have been reached had the fourth amendment been applied. *Rochin* therefore does not support the proposition that due process comprehends a body of substantive rights independent of the guarantees actually contained in the Constitution. *Rochin* can be viewed as a harbinger of *Mapp's* holding that the fourteenth amendment incorporated the fourth amendment. This analysis also applies to other early decisions in which the Court ostensibly gave a broad reading to the concept of due process. Thus, for example, prior to the incorporation of the first amendment, the Court used a general concept of due process to invalidate a state law prohibiting private religious schools. *See Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

**11.** Applying the factors set forth in *Gilmere*, the only allegation that even suggests a substantive due process violation must be inferred from a letter appended, along with several other documents, to Burch's complaint. That letter, dated April 4, 1984, contains a reference to a beating Burch allegedly received at the hands of one Benny Johnson, an FSH attendant. It is highly questionable whether a reference in a letter appended to a complaint can suffice to state a claim. *See supra* note 2. Yet even assuming that a beating was sufficiently stated as a ground for relief, the complaint would still have to be dismissed because Benny Johnson is not named as a defendant in the complaint and we are precluded from basing FSH's liability under section 1983 on a respondeat superior theory. *See generally Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**1.** Frank Kingdon in his book *As FDR Said* (Duell, Sloan & Pearce) quotes Roosevelt's Chicago address:

> "Some of these people really forget how sick they were. But I know how sick they were. I have their fever charts. I know how the knees of our rugged individualists were trembling four years ago and how their hearts fluttered. They came to Washington in great numbers. Washington did not look like a dangerous bureaucracy to them then. Oh no! It looked like an emergency hospital. All of the distinguished patients wanted two things —a quick hypodermic to end the pain and a course of treatment to cure the disease. They wanted them in a hurry; we gave them both. And now most of the patients seem to be doing very nicely. Some of them are even well enough to throw their crutches at the doctor."

Mr. Burch is like that. He seems to have forgotten how sick he was ("hallucinating, confused, disoriented, and clearly psychotic") when the good Samaritan [2] took him to Apalachee Community Mental Health Service. He is now recovered [3] and he seeks our imprimatur upon his suit against the providers of his therapy. I was but an impressionable lad when I heard FDR's figure of speech. I carried an image of a patient flailing away at his doctor with his crutch. I had not, until now, personally encountered a living embodiment of the metaphor!

That is not to say that I should not find a constitutionally based claim for a state's misusing its psychiatric hospitals, asylums, or other facilities as a matter of state policy. I do not ignore reliable reports of such practices in other, totalitarian, nations. There, as a matter of established state procedure, dissidents, politically undesirables and other mentally competent people are said to be "diagnosed" as mental defectives and locked away in purported mental health facilities. I am here, though, raising a straw man for striking. It is not alleged—*it is not even hinted*—that the state of Florida has adopted a state policy of wrongfully confining competent people in its mental institutions.

It clearly appears that the "established state procedure" of Florida is quite equal to the demands of our Constitution. Perhaps Florida should have anticipated that those schooled in mental health care instead of law might stumble into random, unauthorized errors in their attempts to comply with the state mandated procedures. That may be why the state provides for state court, state law, tort recoveries for violations of its mental health act. Fla.Stat. § 394.459(13) (1981).

---

2. The good Samaritan is, presumably, subject to suit for wrongful arrest or kidnapping. Burch was not, apparently, competent to consent to being carried to the mental health facility. Burch appears to be highly sensitive to being handled by those who have only his revocable consent.

3. Burch's recovery appears from the fact that he sues on his own behalf and not through next friend or guardian *ad litem*. His lawyers have accepted him as a client and subjected him to litigation, presumably upon the basis of his consent.