Darrell BURCH, Plaintiff-Appellant,

v.

APALACHEE COMMUNITY MENTAL HEALTH SERVICES, INC., et al., Defendants-Appellees.

No. 85–3843.

United States Court of Appeals, Eleventh Circuit.

Dec. 3, 1986.

---

Richard M. Powers, Tallahassee, Fla., for plaintiff-appellant.

Robert C. Crabtree, Lloyd Monroe, Tallahassee, Fla., for Apalachee Community Mental Health.

Walter M. Meginniss, Asst. Atty. Gen., Eric J. Taylor, Tallahassee, Fla., for Williams, Potter, Parker, Sweet, McCormich, Pandya, Chou, Harrison, Daniel, and Stephens.

Before GODBOLD and TJOFLAT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

In this case plaintiff presents us with a claim that the State of Florida deprived him of his constitutional right to due process of law by confining him in a hospital for the mentally ill without a judicial hearing to determine his need for hospitalization. The district court found that plaintiff failed to state a claim for which relief can be granted. We now affirm.

## I.

On December 7, 1981, an unidentified citizen found Darrell Burch wandering on the highway. Concerned for Burch, this citizen took him to the Apalachee Community Mental Health Services, Inc., (ACMHS), a facility designated to receive patients suffering from mental illnesses. Upon his arrival, Burch was confused and disoriented; one evaluation form states that Burch thought he was in heaven. At the request of ACMHS, Burch signed a voluntary admission form and an authorization for treatment form.[1]

ACMHS diagnosed Burch as having paranoid schizophrenia and began to give him psychotropic drugs. The facility lacked the ability to give Burch the full treatment he needed, however, and transferred him to the Florida State Hospital in Chattahoochee, Florida (FSH) on December 10, 1981. Before transferring Burch, ACMHS had Burch sign a form requesting voluntary admission to FSH, along with a form authorizing treatment at FSH.

Upon his arrival at FSH, that facility also had him sign a request for voluntary admission form, despite the fact that he remained in a psychotic state. On December 23, 1981, FSH had Burch sign another authorization of treatment form. FSH kept Burch as a patient until May 7, 1982, allegedly against his will.

Burch subsequently sued ACMHS and the FSH employees (Employees) who were connected with his admission or treatment.[2] Burch alleged that these defendants had confined and treated him against his will, without any judicial determination of his need for treatment as required by Florida law and the United States Constitution. Burch alleged that the defendants had deprived him of his liberty without due process of law and sought relief under 42 U.S.C. § 1983 (1982).[3]

All of the defendants moved the district court to dismiss Burch's complaint for failure to state a claim upon which relief may be granted. The district court granted their motion, holding that under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), Florida's post-deprivation procedures satisfied the requirements of due process and precluded a section 1983 action.[4] Burch

---

1. Burch attached to his complaint, and incorporated therein by reference, all the forms, documents, and correspondence mentioned in this opinion.

2. Burch's complaint also named as a party defendant the county sheriff who had transported him from ACMHS to FSH. The sheriff, apparently having been dropped from the litigation, is not a party to this appeal.

3. 42 U.S.C. § 1983 (1982) provides the following:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

4. At the time Burch was confined, Florida provided that any person who violated a right guaranteed to a patient under state law would be liable to the patient, unless the defendant acted in a good faith attempt to comply with the law. *See* Fla.Stat. § 394.459(13) (1981); *see also infra* note 14 and accompanying text.

now appeals. As did the district court, we take the material allegations of Burch's complaint as true and construe them liberally in his favor. *See Fundiller v. City of Cooper City,* 777 F.2d 1436, 1439 (11th Cir.1985).

## II.

At the time that Burch was in defendants' care, Florida law mandated a certain procedure for the emergency admission of mental health patients. *See* Fla.Stat. § 394.463(1) (1981) (amended 1984). This procedure allowed a mental health facility to provide emergency, involuntary treatment to a patient if the patient met certain criteria.[5] Within forty-eight hours of the patient's admission, however, the facility had to release the patient, get his voluntary "express and informed consent to evaluation or treatment," or initiate "a proceeding for court-ordered evaluation or involuntary placement." Fla.Stat. § 394.463(1)(d) (1981) (amended 1982). A patient could enter (or remain in) a facility voluntarily if he "ma[de] application by express and informed consent for admission." Fla.Stat. § 394.465(1)(a) (1981).

■ Taking Burch's allegations as true, we cannot doubt that he has a colorable claim that the defendants failed to follow the statutory procedure. The Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), however, held that the eleventh amendment bars a federal court from granting relief against state officials on the ground that they violated state law. Thus, a plaintiff seeking federal relief against state officials must allege and prove a violation of the United States Constitution or of a federal law. Burch grounds his complaint in the due process clause of the fourteenth amendment, urging us to hold that the State deprived him of an unspecified substantive right or failed to grant him adequate procedures. We cannot comply.

■ The due process clause of the fourteenth amendment gives rise to three types of claims: (1) for violations of incorporated provisions of the Bill of Rights; (2) for violations of the substantive component of the due process clause; and (3) for violations of procedural due process. *See Daniels v. Williams,* — U.S. —, —, 106 S.Ct. 662, 679, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1499–1502 (11th Cir.1985) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 and — U.S. —, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986) (allowing recovery under § 1983 on two theories: violations of substantive due process and of the fourth amendment). Properly construed, Burch's claim falls in the third category.

■ An individual has a protected liberty interest in remaining free from long-term mental institutionalization until he voluntarily seeks help or is involuntarily committed after a hearing. *See Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) (the Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection") (citations omitted); *see also Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (prisoner entitled to procedural safeguards before being transferred to mental institution). If the state follows the proper procedures, its confinement of an individual in need of care to a mental rehabilitation facility does not infringe upon any substantive right. *See Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *cf. Gilmere,* 774 F.2d at 1500 (defining substantive due process claims as those which "allege that certain governmental conduct would remain unjustified even if it were accompanied by the most stringent of procedural

---

**5.** Burch does not allege that Florida's statutorily-prescribed procedures were constitutionally inadequate.

safeguards"). In this case, Burch cannot claim that the State of Florida lacked the constitutional power to place him, even involuntarily, into a hospital for treatment of his mental illness. Nor do we find in Burch's complaint any nonconclusory allegation that the governing boards or supervisory employees at ACMHS or FSH had a policy or regular practice of ignoring the State's regulations concerning the admission of patients needing mental care.[6] Thus, we read Burch's complaint as alleging that ACMHS and Employees, by willfully[7] confining and treating him without a valid consent, deprived him of his procedural due process right to a judicial hearing.

### III.

The fourteenth amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). To prevent turning the due process clause into a mere duplication of the common law tort system, the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, — U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), explained the circumstances under which a state could be found to have deprived an individual of his right to procedural due process.

In *Parratt*, a state prisoner sued the prison warden for allegedly depriving him of his property without due process of law.

The plaintiff claimed that the warden's action, negligently losing a hobby kit that the plaintiff had ordered through the mail, entitled him to relief under section 1983. The Supreme Court disagreed. Implicitly holding that the defendants had not deprived the plaintiff of any substantive due process right,[8] the *Parratt* Court found that the plaintiff's claim was one for a negligent deprivation of procedural due process. The Court then stated that "the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt*, 451 U.S. at 539, 101 S.Ct. at 1915 (footnote omitted). Determining that the State could not provide any "meaningful predeprivation process" if it could not predict when its employees would violate its own law and that the State offered a sufficient postdeprivation remedy in the state courts, the Court held that the State had not deprived the plaintiff of procedural due process.[9]

In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court extended *Parratt*, holding that *Parratt*'s reasoning also applied to intentional deprivations of property. In *Hudson*, a state prisoner sued a prison officer for allegedly destroying some of his property during a search of his cell. The Court observed that a state can no more

---

**6.** Burch's complaint incorporates by reference a letter from the Florida Department of Health and Rehabilitative Services indicating that it had informed the administration of the Florida State Hospital that it was probably asking patients voluntarily to commit themselves when they were incapable of making such a decision. Nothing in Burch's complaint, however, alleges a hospital policy or regular practice to effect those commitments, and we find that the context of the letter makes this statement an insufficient basis for us to read his complaint as making such an allegation.

**7.** As we read Burch's complaint, he alleges that the defendants acted "willfully" in the sense of "having intent," not that they acted with malice toward him.

**8.** We find this an implicit holding of *Parratt* because the prisoner's complaint, in alleging a deprivation of due process, did not differentiate between substantive and procedural due process. *See Parratt*, 451 U.S. at 529, 101 S.Ct. at 1910. In restricting its discussion to procedural due process, the Court obviously rejected any notion that the negligent deprivation of the prisoner's hobby kit could infringe a substantive right.

**9.** In *Daniels v. Williams*, — U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court overruled *Parratt* to the extent that *Parratt* held that an official's negligence could implicate the due process clause.

predict an employee's intentional disregard of state law than his negligent disregard, and held that the postdeprivation remedy the State made available to the prisoner satisfied the constitutional requirement of procedural due process.

### A.

Both *Parratt* and *Hudson* dealt with plaintiffs' claims that the state had deprived them of their property without procedural due process. We must now decide whether the logic of *Parratt* and *Hudson* is applicable in this case.[10] We conclude that the language of the fourteenth amendment, and Supreme Court precedent, demand that we avoid the treacherous path of attempting to rank the three fundamental rights mentioned together in the due process clause.

■ The fourteenth amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Reconstruction Congress adopted the amendment, at least in part, to protect the substance of the Civil Rights Act of 1866 from claims that it was unconstitutional and to prevent future congresses from easily repealing the federal protection of citizens against state abuses. *See* Gressman, *The Unhappy History of Civil Rights Legislation,* 50 Mich.L.Rev. 1323, 1328–29 (1952); *see also Lynch v. Household Finance Corp.,* 405 U.S. 538, 544, 92 S.Ct. 1113, 1118, 31 L.Ed.2d 424 (1972). Both the language and the legislative history of the Civil Rights Act of 1866 leave no doubt that the post-war Congress passed the Act out of concern for both the liberty and right to own property of the newly freed slaves, without distinguishing between the relative importance of these rights. *See* Gressman, *supra,* at 1325–27. This brief history of legislation enacted before the adoption of the fourteenth amendment indicates to us that the framers of that amendment valued all three rights protected by the due process clause; rather than ranking these rights, the Congress chose to protect all of them from abusive state power.

Our conclusion is supported by the legislative history of the Civil Rights Act of 1871, which included the section now codified at 42 U.S.C. § 1983. In that act, through which Congress sought to enforce the fourteenth amendment, Congress substantially reenacted the Civil Rights Act of 1866. Here again, Congress demonstrated equal concern for the rights of life, liberty, and property:

> [T]he rights that Congress sought to protect in [that] Act ... were described by the chairman of the House Select Committee that drafted the legislation as "the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety."

*Lynch,* 405 U.S. at 545, 92 S.Ct. at 1118 (quoting Rep. Shellabarger, Cong. Globe, 42d Cong., 1st Sess., App. 69 (1871) (other citations omitted)); *see also* Note, *Civil Procedure: Section 1343(3) Jurisdiction and the Property-Personal Right Distinction,* 1970 Duke L.J. 819, 833–37, 833 ("[T]he framers of the fourteenth amendment and the 1871 Act from which both section 1983 and section 1343(3) were derived evidenced no intention to distinguish between the protection of proprietary or personal interests.") (footnote omitted).

To hold that a plaintiff's claim that the state denied him procedural due process regarding a liberty right is constitutionally distinct from a similar claim relating to a property right would take us into the eddies of confusion and inconsistencies that the Supreme Court forsook in *Lynch.* Pri-

---

10. In *Gilmere v. City of Atlanta,* 774 F.2d 1495 (1985) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 1970, — L.Ed.2d —, and — U.S. —, 106 S.Ct. 1993, 90 L.Ed.2d 654 (1986), this court held that *Parratt's* analysis did not apply to cases where a plaintiff had been deprived of a substantive, rather than procedural, constitutional right. In a footnote, we noted in dictum that *Parratt* might also be limited to cases involving property claims and not apply to allegations of procedural deprivations of life or liberty. *Id.* at 1499 n. 4. As we noted there, however, "our disposition of this case makes it unnecessary for us to use this form of analysis." *Id.*

or to that case, the Court attempted to resolve a seeming inconsistency among jurisdictional statutes by differentiating between property rights and the rights to life and liberty. *See Hague v. C.I.O.*, 307 U.S. 496, 527–32, 59 S.Ct. 954, 969–71, 83 L.Ed. 1423 (1939) (plurality) (Stone, J., concurring) (requiring minimum jurisdictional amount for property claims, but not liberty claims, under predecessor to section 1983). This approach led to unsupportable line drawing and generated much criticism. *See Lynch*, 405 U.S. at 551 n. 20, 92 S.Ct. at 1121 n. 20 (citing scholarly criticism and confusion among the courts); *see also* Eisenberg, *Section 1983: Doctrinal Foundations and an Empirical Study*, 67 Cornell L.Rev. 482, 486 (1982) ("The Court has toyed with intermediate approaches under which section 1983 protects only 'civil' rights or only 'personal' rights, but these never have come to represent a coherent approach to the section.") (footnotes omitted). In *Lynch*, the Court reexamined the legislative history of the fourteenth amendment and the civil rights laws enacted pursuant to it and concluded that:

> [T]he dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a "personal" right, whether the "property" in question be a welfare check, a home, or a savings account.

*Lynch*, 405 U.S. at 552, 92 S.Ct. at 1122. We find no reason to question *Lynch's* continuing vitality and thus have no reason to limit *Parratt* and *Hudson* to cases involving property claims.

 We note that we are not the first court to conclude that the law should analyze claims alleging the deprivation of procedural due process in an identical fashion, regardless of whether the procedure affected the right to life, liberty, or property. Two other courts of appeals have reached the same conclusion as we do today. *See Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir.1985) (en banc) ("When the underlying rationale of *Parratt v. Taylor* is considered, the conclusion that its holding applies only to the deprivation of property lacks foundation."); *Thibodeaux v. Bordelon*, 740 F.2d 329, 339 (5th Cir.1984), ("[W]e hold that *Parratt* applies to deprivations of liberty...."). Similarly, in *Daniels v. Williams*, 748 F.2d 229 (4th Cir.1984) (en banc), *aff'd*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court of Appeals for the Fourth Circuit held that the plaintiff's claim that the State deprived him of his liberty without due process of law was untenable, because negligent acts do not implicate the fourteenth amendment and, alternatively, because under *Parratt* the plaintiff had failed to show inadequate state remedies to redress his liberty claim. *Cf. Ellis v. Hamilton*, 669 F.2d 510 (7th Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982) (holding that available state remedies precluded plaintiff's claim that she was deprived of liberty interest without procedural due process). Other courts have distinguished *Parratt* on other grounds, as our en banc court did in *Gilmere*, and have thus not decided whether property claims are distinct from life or liberty claims. *See Haygood v. Younger*, 769 F.2d 1350 (9th Cir.1985) (en banc), *cert. denied*, —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 379 (1986) (*Parratt* does not apply to state action taken pursuant to established policy); *Piatt v. MacDougall*, 773 F.2d 1032 (9th Cir.1985) (en banc) (same); *Patterson v. Coughlin*, 761 F.2d 886 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986) (*Parratt* applies only to random acts).

We find additional support for our position in recent decisions of the Supreme Court. In *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, —— U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the Court examined the state of mind requirement for a section 1983 case. Both cases involved an alleged liberty deprivation, and in both the Court held that mere negligence does not "deprive" an individual of his lib-

erty as the term is used in the fourteenth amendment. In neither case did the Court indicate that it would have ruled any differently had the alleged deprivation involved life or property.

Finally, in *Parratt* itself the Supreme Court stated that its analysis was harmonious with that of *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), which involved the alleged deprivation of a liberty interest. *See Parratt*, 451 U.S. at 542, 101 S.Ct. at 1916. In *Ingraham* two students claimed that, among other things, the due process clause entitled them to notice and a hearing before public school officials inflicted corporal punishment. *Ingraham*, 430 U.S. at 653, 97 S.Ct. at 1403. The Supreme Court agreed "that corporal punishment in public schools implicates a constitutionally protected liberty interest, but [held] that the traditional common-law remedies are fully adequate to afford due process." *Id.* at 672, 97 S.Ct. at 1413. Thus, despite the presence of a recognized liberty claim, the Court found that state tort law provided sufficient protection against official abuse to afford all of the constitutionally required due process. *See id.* at 676–78, 97 S.Ct. at 1415–16. In light of the liberty deprivation at issue in *Ingraham*, we see the *Parratt* Court's approving citation to that case as further proof that the *Parratt* test equally applies to cases involving liberty or property claims.[11]

### B.

■ Having concluded that Burch's claim is one for a deprivation of procedural due process and that *Parratt* and *Hudson* are controlling, we must now examine whether Burch has established a claim cognizable in federal court. First, we find that Florida could not offer a meaningful predeprivation process under the facts Burch alleges. As we stated earlier, at the time of Burch's confinement Florida had established a system for the involuntary commitment of people with mental disorders. The State had designed its laws to ensure that a person would not be wrongly deprived of his liberty. *See* Fla.Stat. § 394.463(1) (1981) (amended 1982). Burch has not alleged that Florida's statutory procedures were constitutionally inadequate; nor has he made a colorable claim that the governing boards of ACMHS or FSH had a policy, custom, or regular practice of not following the mandated procedure. In light of these facts, we cannot see how Florida could predict that in Burch's case its employees at ACMHS and FSH would ignore the State's command. Thus, as in *Parratt* and *Hudson*, this case does not present a situation where the state could establish any type of predeprivation hearing, beyond that provided by the statutory commitment procedures, to protect Burch from random and unauthorized acts.

■ We next examine Florida law to see if it provides an adequate remedy for the harm Burch allegedly suffered. We find that the State provides a constitutionally adequate remedy.

■ If Burch can prove the facts he alleges, Florida law would allow him to recover damages from ACMHS. Even though Burch alleges that ACMHS is a state agency, the State has partially waived its sovereign immunity in state courts, thus eliminating that possible obstacle to a lawsuit. *See* Fla.Stat. § 768.28 (1981);[12] *Com-*

---

**11.** Our decision today does not, of course, mean that every state remedy that is "adequate" for one interest protected by the due process clause is necessarily adequate for another. *Cf. Thibodeaux v. Bordelon*, 740 F.2d 329, 338 n. 9 (5th Cir.1984); Smolla, *The Displacement of Federal Due Process Claims by State Tort Remedies:* Parratt v. Taylor *and* Logan v. Zimmerman Brush Company, 1982 U.Ill.L.Rev. 831, 871 (" 'adequacy' is a matter of federal *constitutional* concern"). We note that a party relying on an "adequate state remedy" argument, or seeking

to defeat such an argument, has a duty to demonstrate that predeprivation remedies are or are not possible, and that postdeprivation remedies are or are not available and adequate. An investigation of "adequacy" must, of course, consider the extent to which a state has waived its sovereign immunity and whether individual defendants are somehow insulated from liability.

**12.** At the time Burch's cause of action arose, Florida's sovereign immunity law stated in relevant part that:

*mercial Carrier Corp. v. Indian River County,* 371 So.2d 1010 (Fla.1979) (sovereign immunity waived for decisions not involving broad policy or planning matters). Thus, we conclude that existing state law provides Burch with a sufficient opportunity to pursue his claim against ACMHS in state court to comport with due process.[13] Similarly, although Burch chose not to sue FSH as an entity, we see no reason why he could not rely on Florida's partial waiver of sovereign immunity to seek recovery from that state agency.

We also conclude that Burch has adequate state remedies available to him in his suit against Employees. Fla.Stat. § 394.459(13) (1981) provides that "[a]ny person who violates ... [the mental health act] shall be liable for damages." The law excepts those who acted in good faith compliance, but does not immunize a person from liability merely because his act was negligent rather than intentional.[14] In addition to the statute, however, Burch's allegations also contain the elements of the common law tort of false imprisonment. Florida authorizes suits on that tort theory when a person has been "unlawful[ly] restrain[ed]

[a]ctions at law against the state or any of its agencies or subdivisions to recover damages in tort ... for injury ... caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which ... a private person, would be liable to the claimant.

Fla.Stat. § 768.28(1) (1981). The State has since amended the statute, but adheres to its partial waiver of sovereign immunity. Although the law does limit the amount of money a claimant can recover from the State, and requires that a plaintiff submit a claim to the State within three years after it arises, neither provision is so unreasonable as to deny Burch an "adequate" state remedy. *See Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917 (1981), *overruled on other grounds, Daniels v. Williams,* — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("Although the state remedies may not provide ... all the relief which may have been available ... under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process.").

**13.** Under any reading of § 1983 and *Parratt,* Burch would lack a federal cause of action

... against his will." *Johnson v. Weiner,* 155 Fla. 169, 19 So.2d 699, 700 (1944).

## IV.

 In sum, we find that the principles of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), are controlling in this case, where "the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Parratt,* 451 U.S. at 543, 101 S.Ct. at 1917. Burch's claim is, at most, one for damages resulting from the denial of procedural due process, and Florida provides him with a postdeprivation remedy sufficient to satisfy the Constitution's requirement. The judgment of the district court is, accordingly,

AFFIRMED.[15]

against ACMHS if further development of the facts disclosed that the facility was not acting "under color" of state law. He could, of course, sue the clinic in state court under state tort law.

**14.** In full, Fla.Stat. § 394.459(13) (1981) provided that:

Any person who violates or abuses any rights or privileges of patients provided by this act shall be liable for damages as determined by law. Any person who acts in good faith in compliance with the provisions of this part shall be immune from civil or criminal liability for his actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility. However, this section shall not relieve any person from liability if such person is guilty of negligence.

**15.** ACMHS also urges that we affirm the district court on the grounds that Burch's claim was impermissibly predicated upon the doctrine of respondeat superior liability and that it is not a "person" under section 1983. All defendants also claim that they are protected from liability by the eleventh amendment. Because of our disposition of this case, we need not reach these contentions.