**Curtis W. CAINE, Jr., M.D., Plaintiff–Appellant,**

v.

**HARDY, M.D., Woodie L. Mason, et al., Defendants–Appellees.**

No. 89–4470.

United States Court of Appeals, Fifth Circuit.

June 27, 1990.

Order Granting Rehearing En Banc Aug. 3, 1990.

suit against a hospital and the individuals who participated in the termination of Caine's hospital staff privileges. 715 F.Supp. 166.

## I.

Because this appeal is from an order dismissing Caine's lawsuit, the facts alleged in Caine's lengthy complaint are taken as true. *See, L & L Oil Co. v. Murphy Oil Corp.,* 674 F.2d 1113, 1115 (5th Cir. 1982).

Caine is an anesthesiologist who in 1983 was granted staff privileges at Hinds General Hospital, a public hospital in Jackson, Mississippi. As he was required to do by hospital bylaws, Caine reapplied for staff privileges at two year intervals. Caine's applications were reviewed, and each time his privileges were renewed.

Three other anesthesiologists practicing at Hinds General were engaged in a partnership. These partners were M.D. Hardy, M.D.; Hardy's spouse Darilynn Wilson, M.D.; and Robert Strong, M.D. In 1987 and 1988, the members of this partnership sought an exclusive contract to perform anesthesia services at Hinds General. Caine and other independent anesthesiologists practicing at Hinds General objected to the proposed exclusive contract. It was not granted. Caine also ran against Hardy for the Chairmanship of the Hinds General Department of Anesthesiology. Hardy won the election by one vote.

Caine alleges that Hardy and his partners not long thereafter initiated an investigation into Caine's practice at Hinds General that resulted in Caine's staff privileges being suspended by the Executive Committee, then revoked by the Executive Committee, and finally formally terminated by the Hinds General Board of Trustees. Caine claims that he was denied procedural due process of law under the Fourteenth Amendment at each step.

Kent Masterson Brown, Lexington, Ky. and Paul M. Neville, Jackson, Miss., for plaintiff-appellant.

George Q. Evans, Douglas E. Levanway and George H. Ritter, Wise, Carter, Child & Caraway, Jackson, Miss., for defendants-appellees.

Before BROWN, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Curtis W. Caine, Jr., M.D. appeals a district court order dismissing his § 1983 law-

## II.

Caine sued the hospital and the individuals involved in the suspension process in federal district court. He alleged civil

rights claims under 42 U.S.C. § 1983 and the Health Care Quality Improvement Act of 1986 (the HCQIA), 42 U.S.C. § 11101, *et seq.* Without filing an answer, appellees filed a motion to dismiss for failure to state a claim or for summary judgment. Caine filed a motion for leave to amend his complaint in order to assert free speech claims under the First Amendment to the United States Constitution. Caine's motion initially was granted by the district court. Later, however, the district court reversed its decision and refused to allow Caine to amend his complaint. The court then granted appellees' motion to dismiss.

■ The district court, relying on established § 1983 precedent, held that under the *Parratt/Hudson* doctrine [1] Caine could not state a § 1983 claim because the state provided him with an adequate postdeprivation remedy. Under the *Parratt/Hudson* doctrine, a state can not be held liable for a denial of predeprivation procedural due process at the hands of a state actor if the deprivation is random and not authorized by state policy and if the state provides a claimant with an adequate postdeprivation remedy. The court held that the Mississippi procedure provided Caine an avenue of appeal from the action of the hospital to the Mississippi Chancery Court. The court found this to be an adequate postdeprivation remedy.[2] Because Caine did not appeal to the Chancery Court, the district court held that he had not availed himself of available, adequate postdeprivation relief. He could not, therefore, state a § 1983 claim.

### III.

■ We previously have weighed the competing interests of physicians and hospitals, and have concluded that hospitals need not provide doctors full procedural due process before initially suspending medical staff privileges if the suspension is imposed to protect the hospital's patients. *See Darlak v. Bobear,* 814 F.2d 1055, 1063 (5th Cir.1987). A fair reading of Caine's complaint, however, indicates that he claims that the initial suspension was motivated by appellees' personal vendetta against him and not by the hospital's interest in protecting patient safety. Because we must accept this allegation as true, we must conclude that Caine does not come within the *Darlak* rule, but instead was entitled to full procedural due process even in the decision to suspend. *See Northeast Georgia Radiological Assoc. v. Tidwell,* 670 F.2d 507, 511 (5th Cir.1982) ("medical staff privileges embody such a valuable property interest that notice and hearing should be held prior to its termination or withdrawal, absent some extraordinary situation where a valid government or medical interest is at stake."). But, regardless of whether Caine was entitled to full procedural due process at this initial stage, he certainly was entitled to full procedural due process after the suspension because the hospital could no longer have any pressing need to protect its patients from him.

Although a doctor is entitled to full procedural due process before his or her staff privileges are revoked, that entitlement has not in the past automatically established a § 1983 claim if privileges are suspended without procedural due process. Under the *Parratt/Hudson* doctrine, a state could not be held liable for a state employee's "ran-

---

1. The *Parratt/Hudson* doctrine takes its name from two Supreme Court cases: *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part, not relevant here, by *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

2. Without deciding this issue, we note that we have considerable doubt that Mississippi's Chancery Court would provide an adequate postdeprivation remedy. Caine would have had only thirty days to file his appeal to the Chancery

Court. Miss.Code Ann. § 73–25–27. Caine also would not have been entitled to a jury trial although there were critical fact issues. We have noted before that a district court's conclusion that this Chancery Court remedy was adequate "appears to be sound," *Schuster v. Martin,* 861 F.2d 1369, 1374 n. 11 (5th Cir.1988), but we have never so held. Nonetheless, because we decide the present case on other grounds, we need not resolve the possible conflict between the statement in *Schuster* and our view of the adequacy of Mississippi's Chancery Court remedy.

dom and unauthorized" failure to provide predeprivation procedural due process if the state provided an adequate postdeprivation remedy for persons who were deprived of their property without due process of law. *See, Martin v. Dallas County, Texas,* 822 F.2d 553, 555 (5th Cir.1987). This Court has applied the *Parratt/Hudson* doctrine even where the state employee depriving the § 1983 claimant of predeprivation procedural due process was a high-ranking state employee who was charged with providing procedural due process for that claimant. *See Holloway v. Walker,* 790 F.2d 1170, 1173 (5th Cir.1986). Other Courts of Appeals have applied the *Parratt/Hudson* doctrine less broadly than we. *See, e.g., Watts v. Burkhart,* 854 F.2d 839 (6th Cir.1988).

But the controlling constitutional authority has changed. After the district court had dismissed Caine's complaint, the Supreme Court decided *Zinermon v. Burch,* —— U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Court noted that it granted certiorari in *Zinermon* to resolve conflict among the Courts of Appeals over the scope of the *Parratt/Hudson* doctrine. *Zinermon,* 110 S.Ct. at 978. *Zinermon* controls appellant Caine's case. Its holding requires reconsideration of this Court's *Parratt/Hudson* jurisprudence.

*Zinermon* was a § 1983 suit brought by Darrell Burch, a man who had been detained in the Florida state mental hospital. Burch had been found wandering along a highway, hurt and disoriented. After he was diagnosed as a paranoid schizophrenic, state employees secured Burch's signature on forms requesting voluntary admission to the hospital and authorizing treatment by the hospital staff. Burch was kept at the hospital for five months. Upon his release, Burch sued the hospital and its staff in federal court under § 1983. Burch claimed that he overtly was incompetent when he signed the admission and treatment authorization forms. He alleged that by inducing him to commit himself under the voluntary commitment procedure instead of initiating involuntary commitment proceedings, the hospital deprived him of his liberty without procedural due process.

The district court dismissed Burch's claim, holding that under the *Parratt/Hudson* doctrine Burch could not establish a claim based upon the state's failure to provide him with predeprivation procedural due process because Florida's postdeprivation tort remedies were adequate. This holding was affirmed by a panel of the Eleventh Circuit. *Burch v. Apalachee Community Mental Health Services, Inc.,* 804 F.2d 1549, 1551 (11th Cir.1986) *vacated,* 812 F.2d 1339 (1987). After en banc rehearing, however, the Eleventh Circuit reversed the district court's dismissal and held that Burch's § 1983 claim was not subject to the *Parratt/Hudson* doctrine. *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 803 (11th Cir.1988) (en banc).

The Supreme Court affirmed the en banc Eleventh Circuit decision. The Court found that *Zinermon* was not controlled by the *Parratt/Hudson* doctrine for three reasons. First, the deprivation of Burch's liberty did not occur at an unpredictable, but rather at a predictable, time. It was clear that "[a]ny erroneous deprivation will occur, if at all, at a specific, predictable point in the admission process—when a patient is given admission forms to sign." *Zinermon,* 110 S.Ct. at 989. Second, the Court found that it was not impossible for Florida to provide predeprivation due process in the mental health care voluntary admission procedure. Third, the Court held that the state employees' conduct was not "unauthorized" as that term was used in *Parratt* and *Hudson.* The Court explained:

The State delegated to [the state employees] the power and authority to effect the very deprivation complained of here, Burch's confinement in a mental hospital, and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement. In *Parratt* and *Hudson,* the state employees had no similar broad authority to deprive prisoners of their personal property, and no similar duty to initiate (for persons unable to protect their own interests) the

procedural safeguards required before deprivations occur. The deprivation here is "unauthorized" only in the sense that it was not an act sanctioned by state law, but, instead, was a "depriv[ation] of constitutional rights ... by an official's abuse of his position."

*Zinermon,* 110 S.Ct. at 990 (citation omitted). Because Burch's claim was not controlled by the *Parratt/Hudson* doctrine, the Court held that Burch properly stated a § 1983 claim for the state's failure to provide him predeprivation procedural due process.

■ The lesson of *Zinermon* is that the *Parratt/Hudson* doctrine is restricted to cases where it truly is impossible for the state to provide predeprivation procedural due process before a person unpredictably is deprived of his liberty or property through the unauthorized conduct of a state actor. In *Zinermon,* however, the deprivation was not unpredictable. It was not impossible, therefore, for the state to provide predeprivation procedural due process. Since the state actor who caused the deprivation was authorized to take the action that caused the deprivation, the *Parratt/Hudson* doctrine did not apply. It follows that when the *Parratt/Hudson* doctrine does not apply, a § 1983 plaintiff can state a claim for the state's failure to provide predeprivation procedural due process.

Our interpretation of *Zinermon* is supported by the Supreme Court's treatment of two cases that reached the Court after *Zinermon.* In *Fields v. Durham,* 856 F.2d 655 (4th Cir.1988), a state college administrator was discharged under the state's dismissal procedures, although the procedures provided to the administrator allegedly were faulty. The Fourth Circuit held that the *Parratt/Hudson* doctrine applied and that the administrator could not state a § 1983 claim for the state's failure to provide him predeprivation procedural due process. The Supreme Court vacated the Fourth Circuit's opinion and remanded the case to the Fourth Circuit "for further consideration in light of *Zinermon....*"

*Fields v. Durham,* — U.S. —, 110 S.Ct. 1313, 108 L.Ed.2d 489 (1990).

The Supreme Court at the same time ordered the Seventh Circuit to reconsider a recent case involving facts significantly analogous to the facts alleged by Dr. Caine. *Easter House v. Felder,* — U.S. —, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990). The en banc Seventh Circuit had held that under the *Parratt/Hudson* doctrine an adoption agency could not state a § 1983 claim for the state's failure to provide the agency with procedural due process before state employees, as part of an alleged conspiracy with a rival adoption agency, deprived Easter House of its state operating license. *Easter House v. Felder,* 879 F.2d 1458, 1460–61, 1474 (7th Cir.1989) (en banc). In both *Fields* and *Easter House,* the deprivations were predictable, the state could have provided predeprivation procedural due process, and the deprivations occurred at the hands of state actors who were authorized by the state to take the actions that caused the deprivations. Thus, under *Zinermon,* neither *Fields* nor *Easter House* should be controlled by the *Parratt/Hudson* doctrine.

■ We conclude that the present case is controlled by *Zinermon* and is not subject to the *Parratt/Hudson* doctrine. Caine could readily have been supplied with adequate procedures even before suspension since under the posture of the case the facts accepted as true show suspension without any threat to the safety of patients. But in any event, it is also clear that the state could have provided Caine with full procedural due process in the pretermination stage before his privileges finally were taken away from him. Further, it was obvious that the move towards suspension and then termination would inevitably result in proceedings directed at removal of staff privileges held before state actors. Thus, the deprivation of the present case was more predictable than were the deprivations in *Fields* and *Easter House.* Finally, the state actors' actions in the present case were not unauthorized. Appellees were delegated the power by the state to deprive doctors such as Caine of

the staff privileges. That the deprivation in Caine's case may have resulted from "an official's abuse of his position," in the words of *Zinermon*, does not make appellees' actions unauthorized.

We hold, therefore, that the *Parratt/Hudson* doctrine does not bar Caine's § 1983 claim.

### IV.

The district court also dismissed Caine's claims under the HCQIA, holding that this Act "was not intended to ... provide a disciplined physician with a private cause of action." Caine does not allege error in the district court's ruling. This issue is not before us.

### V.

■ Caine claims that the district court erred in refusing to allow him to amend his complaint to add a claim under the First Amendment to the United States Constitution. He argues that his privileges were revoked "in retaliation for ... [his] vocal opposition to the proposed exclusive anesthesia contract at Hinds General, the failure of Dr. Hardy to call regular Anesthesia Department meetings as required by Medical Staff Bylaws, and [his] opposition to Dr. Hardy in the election for Chairman of the Anesthesia Department." The district court refused Caine's proposed amendment after initially accepting it. The court held that the amendment failed to state a claim because Caine did not "establish that the speech involved was a matter of public concern." Caine urges that his speech was a matter of public concern because it involved the operation of a public hospital.

Fed.R.Civ.P. 15(a) provides, in pertinent part, that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...." Appellees never filed a responsive pleading, but instead first filed their motion to dismiss for failure to state a claim or for summary judgment. These motions are not pleadings. *Zaidi v. Ehrlich*, 732 F.2d 1218, 1219–20 (5th Cir.1984). *See also* Fed.R.Civ.P. 7 and 3 J. Moore,

Moore's Federal Practice 15.07[2] (2d ed. 1989). Under the terms of F.R.Civ.P. 15(a), therefore, Caine should have been permitted "as a matter of course" to amend his complaint. *See Zaidi*, 732 F.2d at 1220. The district court erred in not allowing this amendment.

### VI.

We reverse the district court's dismissal of appellant Caine's § 1983 claims and reverse the district court's refusal to allow Caine to amend his complaint.

REVERSED AND REMANDED.

EDITH H. JONES, Circuit Judge, dissenting:

With all due respect to my colleagues, I strenuously disagree with their conclusion that *Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), "controls" this case. Depending on our interpretation of Dr. Caine's procedural due process allegations, *Zinermon* is either irrelevant or distinguishable. These terse conclusions require elaboration, because *Zinermon* undoubtedly complicated an already overloaded procedural due process jurisprudence.

The majority accept Dr. Caine's unblushing claim that his initial suspension was "motivated by appellees' personal vendetta against him" and not by the hospital's interest in promoting patient safety. Dr. Caine's 50–page complaint nowhere denies that he was in fact suspended under a hospital regulation which authorizes summary suspension when a practitioner's conduct "requires that immediate action be taken to protect the life of any patient(s) or to reduce the substantial likelihood of immediate injury or damages to ... any patient ..." Article VI § 2a, Hines General Hospital Medical Staff By–Laws Rules and Regulations (1987).[1] Among the voluminous documents attached to his complaint is a letter from the hospital invoking Article VI § 2a to support its initial suspension of his medical privileges. I cannot think that we are bound by Rule 12(b)(6) to defer to the plaintiff's characterization of his

---

1. The entire record in the trial court was sealed by agreed order. It should not breach the parties' desire for confidentiality, however, to reveal that the charges against Dr. Caine were of a most serious nature.

claim even though it is contradicted by a "true and correct copy" of one of his allegedly supporting documents. But whether or not we assume that Dr. Caine was summarily suspended, I contend that he received all the process that was constitutionally due and has not stated a claim for relief.

## I.

In the event that Dr. Caine was summarily suspended "to protect the life of patients or prevent imminent danger to patients", he was not constitutionally entitled to a predeprivation hearing. Both the Supreme Court and this court have long struck the procedural due process balance so as to dispense with a requirement for pre-deprivation remedies when there is a need for immediate state action. *Parratt v. Taylor*, 451 U.S. 527, 538–39 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) overruled in part *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Darlak v. Bobear*, 814 F.2d 1055 (5th Cir.1987). In such circumstances, "the Court has held that a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon*, —— U.S. at ——, 110 S.Ct. at 984. The majority apparently would agree that this rule forecloses a procedural due process claim by Dr. Caine if (a) he was suspended pursuant to Article VI § 2a and (b) he was furnished a post-deprivation hearing.

The allegations in Dr. Caine's complaint and the records attached to it fulfill both of these conditions, demonstrating that he received both pre- and post-deprivation procedural protections. Dr. Caine's summary suspension was preceded by two conferences with fellow anesthesiologists from the hospital who had been asked to conduct the investigation into his handling of a particular anesthesia case. After Dr. Caine objected to being caught unaware by the allegedly inquisitorial tone of the first meeting, he asked for and participated in a second conference five days later.

Although Article VII of the hospital by-laws provided a right to a formal post-suspension hearing within seven days after summary action, Dr. Caine's complaint and exhibits demonstrate that he secured immediate legal advice, sought additional informal meetings with the hospital investigating committees, which were granted, and requested several continuances of the formal hearing. In the end, he declined to go through with the formal evidentiary hearing and did not avail himself of Mississippi's judicial review of the suspension. Miss.Code Ann. § 73–25–27. These facts place his case on all fours with *Darlak*, 814 F.2d at 1055, in which we rejected a physician's due process challenge to summary suspension followed by a more severe suspension. As in *Darlak*, Dr. Caine had the chance to defend himself informally before being summarily suspended. 814 F.2d at 1062–63. As in *Darlak*, Dr. Caine could have, but did not, invoke a formal due process hearing just after summary suspension. Thus, assuming that Dr. Caine was summarily suspended and relying on the facts pleaded and documents attached to his complaint, it is plain that *Darlak* forecloses any procedural due process claim. It is also plain that *Zinermon* has no application to a due process claim founded on a summary suspension of medical privileges.

## II.

Even if we assume that Dr. Caine's termination constituted an abuse of the summary suspension procedure or arose from a non-summary action, I cannot agree that he has stated a claim by the conclusory assertion that he was "denied procedural due process." The documents attached to his complaint prove instead that the hospital provided detailed procedures to protect the rights of a physician under investigation and that both parties, assisted by counsel, referred to these procedures at every turn during the six-month period between the first complaint about Dr. Caine and the board of trustees' final decision on suspension. Neither on the facts nor on the law is this case at all similar to *Zinermon*, nor does it warrant the majority's broad suggestion that *Zinermon* has significantly changed our circuit's due process jurisprudence.

I continue to agree with the trial court that according to the *Parratt/Hudson* doc-

trine, Dr. Caine stated no procedural due process claim because he had an adequate post-termination remedy by way of hospital procedures as well as a state lawsuit for review of the hospital's suspension order. Miss.Code Ann. § 73–25–27. According to the majority, *Zinermon* has changed this rule. I agree that *Zinermon* adds a wrinkle to our current analysis of due process violations, but the import of that case must be judged from its unique facts.

*Zinermon* undertook to determine whether a due process violation was alleged by a man whose "voluntary commitment" to a Florida mental institution was actually involuntary because he was plainly incompetent at the time he signed the necessary papers. He alleged that the hospital officials knew or should have known of his condition and should have utilized the procedurally safeguarded involuntary commitment process. The Eleventh Circuit split over several issues, including whether a state tort suit for false imprisonment afforded an adequate post-deprivation remedy, i.e., all the process that was due under the *Parratt/Hudson* doctrine.

The Supreme Court started with the proposition that ordinarily the state may not take a person's life or liberty until *after* it has provided due process of law. U.S. Constitution Article XIV.[2] The nature of the process that is due before a deprivation varies with the circumstances. *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).[3] If, however, a deprivation occurs in a way that the state could not have been expected to anticipate, for instance, because a state actor took property to which he was not entitled, the only process constitutionally required is an adequate post-deprivation remedy. *Parratt*, 451 U.S. at 543–44, 101 S.Ct. at 1916–17; *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Court in *Zinermon* portrayed *Parratt/Hudson* as a "special case of the general *Matthews v. Eldridge* analysis, in which post-deprivation remedies are all the process that is due, simply because they are the only remedies the state could be expected to provide." *Zinermon*, 110 S.Ct. at 985.[4]

*Zinermon* analyzed the state officials' conduct in admitting Burch to the mental hospital and concluded that *Parratt/Hudson* did not vindicate the adequacy of a post-deprivation remedy because the voluntary commitment procedure presented both a high risk of erroneous deprivation of a mentally ill person's liberty, and the substantial likelihood that minimal further procedural safeguards could readily have avoided the deprivation. *Zinermon* requires a hard look at a *Parratt/Hudson* claim to determine whether the state official's conduct, under all the circumstances of the deprivation, could have been adequately foreseen and addressed by procedural safeguards. If it could, then the case requires classic *Matthews* balancing and has stated a claim for relief. *Zinermon* did not, however, explicitly or implicitly disavow the *Parratt/Hudson* doctrine, nor did it portend that any alleged violation of procedural due process undertaken within the scope of an established and articulated state regulatory framework automatically falls outside the purview of *Parratt/Hudson*. *Zinermon* employs and hence requires case-by-case analysis of the deprivation at issue. *See Zinermon*, O'Connor, dissenting, —— U.S. ——, 110 S.Ct. at 995.

The majority and I do not differ in the general conclusion that *Zinermon* has re-

---

**2.** The well-recognized exception to the requirement of a pre-deprivation remedy is that of public safety regulation described in part I above. *Zinermon*, —— U.S. ——, 110 S.Ct. at 978, 108 L.Ed.2d 100 (1990).

**3.** *Matthews* specifies that three factors must be weighed in determining the procedural protections the Constitution requires in a particular case: the private interest that will be affected by the official action; the risk of an erroneous deprivation of the interest through the procedures used, and the probable value of additional procedural safeguards; and the government's interest, including the function involved and the burdens that additional procedural requirements would entail. *Id.*

**4.** Also, "*Parratt* is not an exception to the *Matthews* balancing test, but rather an application of that test to the unusual case in which one of the variables in the *Matthews* equation—the value of pre-deprivation safeguards—is negligible in preventing the kind of deprivation at issue." *Zinermon*, 110 S.Ct. at 985.

stricted *Parratt/Hudson* to cases in which "it truly is impossible to provide pre-deprivation safeguards." I disagree strongly, however, that *Zinermon* breathes life into Dr. Caine's complaint. Referring to the three reasons why the *Zinermon* court distinguished *Parratt/Hudson,* 110 S.Ct. at 989–90, the majority first says that "the state could have provided Dr. Caine with full procedural due process before finally removing his hospital privileges."[5] They next suggest that this deprivation was "foreseeable." Third, they find that the state actors' conduct, as in *Zinermon,* was not "unauthorized," because hospital personnel were "delegated power by the state to deprive actors such as Caine of the staff privileges." This third conclusion seems tantamount to suggesting that *any error* committed during a state due process scheme cannot be random and unauthorized because state actors were "authorized" to effectuate the scheme. All of these analogies to *Zinermon* are too broad.

First, I see no way in which the state could have articulated more explicit procedural safeguards to protect Dr. Caine against the specific risk that his privileges would be suspended because of his peers' anti-competitive motives. *See Zinermon,* 110 S.Ct. at 987–88. The hospital regulations state when, how and for what reasons doctors may be disciplined. They permit immediate suspension only to protect the safety of patients and then only after an investigation. Alternately, they provide for a formal investigation and informal hearings, followed by a full evidentiary hearing and possible appeal to the hospital board of trustees. A final resort may be had to prompt state judicial review.[6]

In *Zinermon,* the state's provision for voluntary commitment without procedural protections was *explicit* and the risk of erroneous application of that procedure undoubtedly high, because it operated against people who already lacked their full faculties. Thus, the Court's conclusion that Mr. Burch was subjected to a serious risk of deprivation of his liberty is hardly surprising. In Florida, "[t]he staff are the *only* persons in a position to take notice of any misuse of the voluntary admissions process, and to insure that the proper procedure is followed." *Zinermon,* 110 S.Ct. at 988. Dr. Caine clearly is not "victimized" by the panoply of procedural rights created by the hospital regulations. He never alleges that those regulations are infirm. Rather, he alleges that the regulations were *violated,* purportedly at every stage, by the dozen or so state actors responsible for enforcing them. The violations occurred even though attorneys represented both sides. *Zinermon* characterizes the risk facing the patient as one of an erroneous deprivation *made possible by Florida's voluntary commitment procedures.* The risk to Dr. Caine, however, sprang only from wanton and intentional alleged violations of inarguably controlling state regulations.

The means of deprivation in *Zinermon* cannot be untied from the Court's analysis that a more complete state regulatory scheme could have prevented the deprivation. Thus, the addition to the scheme of a simple certification by one of the admitting officers that the patient was competent to commit himself would seem adequate to cure the problem. *Zinermon,* 110 S.Ct. at 988. The majority engage here in no such analysis, nor can they. There is no deficit in the hospital's procedural regulations. As previously stated, the doctor challenges solely the bias of his peers and their violation of those regulations. These allegations naturally disprove the majority's third *Zinermon* based conclusion that the "state actors' actions in the present case were not unauthorized." (emphasis added). Of course they were! Investigatory and judicial bias in implementing the regulations is always unauthorized, if they are not alleged to flow from the regulations themselves. *Holloway v. Walker,* 784 F.2d 1287, 1292–93 (5th Cir.1986). Nearly every paragraph of Dr. Caine's 50–page complaint concludes with the assertion that the

5. For the sake of argument only, I shall assume with the majority that Dr. Caine was not sanctioned pursuant to Article VI § 2(a) of the hospital regulations for the safety of patients.

6. The majority's swipe at the "adequacy" of this Mississippi state review is gratuitous, but because it is mere dicta, I shall not discuss it further.

hospital actors' conduct violated a particular provision of the regulations. The majority have already assumed away the only reason authorized by the regulations for immediate suspension of hospital privileges, i.e., to protect the safety of patients. Hence it follows that any other action which brought about that result had to be *unauthorized* by the regulations. In *Zinermon*, by contrast, the voluntary admission of the patient may have been an abuse of judgment by the staff authorized to admit him, but their exercise of judgment was specifically condoned by the regulations. "Florida's [statutory scheme] ... gives state officials broad power *and little guidance* in admitting mental patients." *Zinermon*, 110 S.Ct. at 988. Such is emphatically not the case under the conditions assumed by the majority.

The factors which distinguish *Zinermon* from *Parratt/Hudson* do not pertain to this case. Moreover, there were adequate and prompt post-deprivation remedies available to Dr. Caine including a formal hearing, appeal to the board of trustees, and state judicial review.[7] Therefore, according to *Parratt/Hudson*, Dr. Caine was not deprived of procedural due process.

The majority have erred. I respectfully dissent.

## SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, GEE, POLITZ, KING, JOHNSON, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHE, WIENER and BARKSDALE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing enbanc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

7. He never used these remedies. As we stated in *Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir.1987), a party may not refuse to invoke the process to which she is entitled and then claim a denial of constitutional procedural due process.